### FARMERS GINNERY AND MANUFACTURING COMPANY *v.* THRASHER *et al.*

1. If a warehouse company put up in conspicuous places at and around its warehouse printed posters or notices, signed by it, to the effect that all cotton stored with it would be insured for its full value as .against loss by fire for thirty days after such time as the cotton entered the warehouse, for the charge of fifty cents per bale, which charge was to cover insurance and other warehouse charges, this constituted an offer to contract, and a contract resulted between the warehouse company and such persons as had knowledge thereof and acted upon it in storing cotton.

(a) If any of the plaintiffs saw and read such notices, and acted upon them in storing cotton with the warehouse company, and suffered loss from fire by reason of the failure of the company to insure the cotton for its full value, the company would be liable to such persons for the full value of the cotton so destroyed, less legitimate charges.

(b) It was conceded by the plaintiffs that a credit should be allowed on account of a payment made to each of them from the distribution of a

fund arising from a policy of insurance of a certain amount which had been taken by the company, and from salvage after the fire.

2. If a general custom existed on the part of the warehouses in a certain municipality to insure to its full value the cotton of patrons stored with them with the necessary characteristics, patrons who stored cotton with one of such warehousemen, knowing of the custom, and relying upon it, can assert a duty on the part of such warehouseman to so insure his cotton.

3. It is not necessary that a witness should be a warehouseman in order to have sufficient knowledge to render him competent to testify as to the existence of such usage or custom among the warehouses of a particular town or city. If a person has been accustomed to deal with such warehouses, and to deposit cotton with them, so as to know their usage or custom on that subject, he is competent to testify as to it.

(a) Such witnesses can not testify as matter of opinion in regard to the law, or give an opinion as to the effect of such a custom or usage; but they may testify as to the existence of such custom or usage as a matter of fact.

4. If a warehouse company placed an agent in charge of its warehouse for the purpose of dealing with the public, and as such he had authority to receive, weigh, and give receipts for cotton, making a charge of fifty cents for thirty days, which other evidence showed included a charge for insurance, his statements, in connection with the discharge of his duties, to the effect that cotton deposited would be insured, were admissible in evidence against the company; and his agreements within the scope of his authority would bind the company.

(a) A director is not, by virtue of that position alone, authorized to make admissions or contracts for the company.

(b) Nor would evidence merely that he was secretary of the company authorize the introduction of such contracts or admissions as to insuring cotton, unless made in the scope of his employment.

5. A warehouse receipt stated that the warehouseman received from a named person a stated number of bales of cotton, "Marks, Nos., etc., as per margin, deliverable to this receipt, or its duplicate, by paying customary charges and all advances and indebtedness (acts of Providence and fire excepted)." On the left-hand margin were blanks for the marks and certain charges such as ginning, storage, weighing, insurance, reweighing, drayage, bagging, and ties. Held, that the words, "acts of Providence and fire excepted," did not constitute such an express contract as prevented the introduction of evidence to show that there was a custom of the trade, in the municipality where the warehouse was located, for warehousemen to insure for its full value cotton placed on storage with them, along with evidence showing that a charge for the insurance was made.

6. While some of the numerous exceptions to the auditor's report may have been sustainable, none of them were of such a character as to require a reversal. On the case as a whole, there was no reversible error

on the part of the judge, to whom it was submitted without a jury, in rendering judgment in favor of the plaintiffs.

JANUARY 18, 1916.

Exceptions to auditor's report. Before Judge Cox. Turner superior court. October 28, 1914.

*Hal Lawson, T. R. Perry,* and *R. S. Foy,* for plaintiff in error.

*J. A. Comer* and *Crum & Jones,* contra.

LUMPKIN, J. A number of persons brought an equitable action for an accounting and to recover judgments against a warehouse company. They alleged, among other things, that the defendant was bound by contract, and by a local custom of the trade, to fully insure cotton stored with it, and that through its agents and officers it represented that it had done so; that in fact it took out a general policy for much less than the value of the cotton stored; that a loss by fire occurred, and a fund was realized by it from salvage and the insurance which it had, but the cotton saved was in such condition that it could not be identified. Other persons, claiming to have stored cotton with the warehouse company, were made parties. The case came to this court from a ruling on a demurrer; and the petition generally was upheld. *Farmers Ginnery &c. Co.* v. *Thrasher,* 140 *Ga.* 669 (79 S. E. 474). The case was then referred to an auditor, who made a report favorable to the plaintiffs. Exceptions to his report were filed. They were submitted to the judge of the superior court, without a jury. He rendered judgment against the exceptions, and the defendants brought the case to this court by writ of error. Pending the litigation a payment was made to each of the plaintiffs from the fund arising from the insurance which the warehouse company carried, and from the salvage. The amounts so realized, it was conceded by the plaintiffs, should be allowed as credits, and they claimed the value of the cotton lost, less such credits and certain charges.

1. There was evidence tending to show, that, prior to about 1907 or 1908, the warehouse company had been charging thirty cents per bale for storage for thirty days, and had not been insuring cotton; that they inaugurated a practice of insuring the cotton stored with them; that a charge of fifty cents per bale was made for the first thirty days, which included charges for storage, warehouse charges, and insurance, and after thirty days an additional charge of twenty-five cents per bale per month was made; and that the de-

fendant caused to be posted in prominent places about the premises, where they could be readily seen by customers or persons coming to the place, printed posters or notices, signed by it, to the effect that all cotton would be insured against loss by fire, and that a charge of fifty cents a bale would be made, which was to cover insurance and other warehouse charges. The auditor found: "I find that the action of the defendant company in representing by posters or notices placed in conspicuous places at and around its warehouse, to the effect that all cotton stored with it would be insured for its full value against loss by fire, thirty days from such time [as] the cotton entered the warehouse, for the charge of fifty cents per bale, which charge was to cover insurance and other warehouse charges, constituted a contract between the defendant warehouse company and such of the original plaintiffs and intervenors as had knowledge of the same and acted upon it." "I further find that if any of the original plaintiffs or intervenors, having seen and read the notices above referred to, acted upon the same and stored cotton with the defendant warehouse company, and suffered loss thereby from fire by reason of the failure of the defendant company to insure the cotton for its full value, that such defendant company would be liable to such person in damages for the full value of the cotton so destroyed, less legitimate charges." In this there was no error.

The notices were not mere announcements of a business policy, or offers to secure bids, or even similar to merchants' advertisements in newspapers of goods which they desire to sell. According to evidence for the plaintiffs, and the finding of the auditor, they amounted to offers to receive cotton on the terms stated; and when such an offer was seen and accepted and cotton was delivered to the defendant on such terms, there was a binding contract.

The mere fact that the notices had remained posted for several years before the fire made no difference. The offer had not been withdrawn, but was still held out, and there was no change in the charges.

2. The auditor further reported: "I find that a general custom among the warehouses of Ashburn to carry fire insurance upon the cotton of their customers would constitute a binding contract between the defendant warehouse and such of its customers as acted upon it; and if said defendant warehouse failed to carry full insur-

ance, and loss was occasioned thereby, it would be liable to such customer for the amount of such damage so sustained." The evidence authorized the finding that there was such a custom as became binding as a part of the contract; and the finding of law was not erroneous, though it may not have stated the rule in the terms employed in the Code. The auditor was dealing with the case before him, not with general principles; and we consider this finding in connection with the case before him and his other findings.

3. Evidence of certain witnesses, as to the existence of a custom of the warehousemen in Ashburn to insure cotton, was introduced. Objection was made on the ground that the existence of such custom was a conclusion to be drawn from the facts; and that it was not competent for witnesses to testify that there was such a custom, but only to facts from which the conclusion could be drawn. If a witness is shown to have knowledge of a custom, he can state what it is, not as a matter of opinion or law, but as a fact. This is sometimes admissible in construing a contract, and sometimes as showing a custom of such universality as to enter into it. Civil Code (1910), §§ 1 (par. 4), 5793. While a distinction has sometimes been drawn between usage and custom, it is evident that the word "custom," as used in examining the witnesses in this case, was not employed for the purpose of having the witnesses testify that a custom existed which had become binding as law, or to give their conclusions as the effect of the custom or usage inquired about, but for the purpose of ascertaining the fact of its existence. In *Park* v. *Piedmont &c. Insurance Co.,* 48 *Ga.* 601, 607, the form of question suggested in order to prove a general usage or custom in a life-insurance business was, "What is the general or universal usage and custom in the life-insurance business as to the commutation of renewals?" Thus the word "custom" was employed as equivalent to "usage," as a fact, and not as seeking from the witness an opinion as to the law. It is not essential that a witness must have been a warehouseman in order to have had knowledge on this subject. He may have acquired it by dealing with the warehouses of the city as a patron. The custom it was sought to prove was not one involving scientific or professional skill, such as the methods of treatment by physicians or surgeons, or of dealing with electrical appliances or the like, but one in regard to which

any person familiar with the facts was competent to testify. Griffin v. Rice, 1 Hilt. 184; *Berry* v. *Cooper,* 28 *Ga.* 543 (2). Generally evidence of the custom or practice of a single warehouse is not, without more, admissible or sufficient to establish a custom in the locality. But if the custom of each warehouse in a given locality is shown to be the same, in the aggregate it is the custom of all. A number of the plaintiffs at least are shown to have known of the custom, and their evidence was admissible. The rulings on the admission of evidence as a whole did not present such error as to require a reversal.

4. There was evidence that one Bailey was in charge of the warehouse, and received, weighed, and gave receipts for cotton, making the charge of fifty cents. If he was held out to the public as the agent of the defendant in charge of its warehouse, and authorized to make a certain charge, which in fact included a charge for insurance, his statements dum fervet opus, made to patrons depositing cotton, to the effect that it would be insured, were admissible against the company. His agreement while acting in the scope of his authority on this subject (which there was evidence tending to show) would bind the company. Civil Code (1910), §§ 3593, 3595, 3598, 3606; *Cable Co.* v. *Walker,* 127 *Ga.* 65 (56 S. E. 108); *Baldwin* v. *Garrett,* 111 *Ga.* 876 (36 S. E. 966).

The statements of one Jenkins that the cotton was insured were admitted. The only ground for the admission of his statements as admissions or agreements was that he was a director, and one witness referred to him also as secretary of the defendant. A director may by express agreement or by usage become the agent of the company, and his acts may become binding on it. But the mere fact that he is a director gives him no right to bind the company by his acts or sayings. Directors act as a body, not by the statements of an individual director, unless he has received authority to speak for the company. *Garmany* v. *Lawton,* 124 *Ga.* 876 (53 S. E. 669, 110 Am. St. R. 207). The admission of the statements of Jenkins that the cotton was insured was error; but, in view of the other evidence, it was not such error as ought to require a reversal.

5. The warehouse receipts were made out on printed forms. One of them was as follows:

"Farmers' Ginnery & Mfg. Co.                    No. 2887.

Marks        No. Weight      P. Marks Re-Wt.      Remarks

Received from B. H. Adkins

Ginning ......$1.58      Bales of Cotton, Marks, Nos. etc., as

Storage .......$           per margin, deliverable to this receipt,

Weighing ......$          or its duplicate, by paying customary

Insurance .....$         charges and all advances and indebted-

Reweighing ....$       ness.

Drayage .......$        (Acts of Providence and fire ex-

Bags & ties....$1.00   cepted.)

                                    "H. A. Bailey, Weigher."

It was contended that the words, "Acts of Providence and fire excepted," constituted a limitation upon the liability of the warehouse company, and that a custom could not be shown to the contrary. The point is substantially ruled in *Hamilton* v. *Moore,* 94 *Ga.* 707 (19 S. E. 993), where the form of receipt used was somewhat similar to that here involved; and the same principle is recognized in *Zorn* v. *Hannah,* 106 *Ga.* 61 (31 S. E. 797). See also *Atwater* v. *Hannah,* 116 *Ga.* 745 (42 S. E. 1007); *Rochelle Gin &c. Co.* v. *Fisher,* 13 *Ga. App.* 621 (79 S. E. 584). We were asked to review and overrule the decision in the case first cited. It was a unanimous decision of this court when composed of three members, and it would require the concurrence of five members of the court as at present constituted to overrule it, even if there were any disposition to do so. Civil Code (1910), § 6207. The requisite number of Justices do not concur in so doing.

6. We have discussed what we consider the more important questions. There are numerous exceptions. If any of them present minor errors, they show no cause requiring a reversal. The evidence authorized a finding that it was the duty of the defendant to insure the cotton of the plaintiffs to its full value, and authorized the judge, to whom the cause was submitted without a jury, to render judgment against the exceptions to the auditor's report. If there were any of the plaintiffs who occupied a special or distinctive position, they should have been pointed out in the exceptions, and the reason therefor shown. Upon the whole case, no cause for a reversal is shown.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*