MICHAEL KELLY, Respondent, *v.* OTIS ELEVATOR COMPANY, Appellant and Third-Party Plaintiff-Appellant. BARLOW-MEAGHER Co., INC., Third-Party Defendant-Respondent.

First Department, March 2, 1954.

*William F. McNulty* of counsel (*Walter L. Glenney* with him on the brief; *Hampton & Mahoney,* attorneys), for appellant.

*Robert R. Bauman* of counsel (*Amadeus J. Ward,* attorney), for respondent.

*Jerome Teich* for third-party defendant-respondent.

BERGAN, J. Plaintiff was employed as a laborer by Barlow-Meagher Co., Inc., in cleaning elevator shafts at Gimbels store, a hazardous employment covered by the Workmen's Compensation Law. He was injured in the course of that employment and this third-party tort action is maintained against defendant Otis Elevator Company based on negligence and that defendant has joined the Barlow-Meagher corporation under a cross complaint seeking liability over.

On the trial the jury returned a verdict of $50,000 against the defendant elevator company and rendered a special verdict finding fraud in the making of an indemnity agreement between defendants which led the Trial Term to grant judgment in favor of the third-party defendant dismissing the third-party complaint.

The case comes here on the appeal of the elevator company which argues that there is no basis in the record for the judgment which has been entered against it; and also that in the alternative, if the judgment against it stands, it should have recovery over against the third-party defendant, the plaintiff's employer. We first examine the record to test the sufficiency and the weight of the evidence to support the main verdict.

The elevator company had been installing elevators in the store. In the work of cleaning the shafts which plaintiff's employer Barlow-Meagher had undertaken to do, it was convenient and helpful to the operation to use the elevators in the shafts as platforms upon which to stand for the purpose of cleaning. Plaintiff's employer requested the elevator company for permission to use the uncompleted elevators for this purpose.

The request was in writing and sought " possession and use " of elevators " in an incomplete condition " prior to " completion and inspection ". Barlow-Meagher further agreed to operate the elevators " at our risk and expense "; to have a competent man to " oil and clean " them; and to have a competent operator " in the car ". The written instrument further assumed full liability and indemnity for accident and liability for accident when the elevators were thus being used.

While plaintiff was standing on the elevator here in question using its platform as a scaffold near the bottom of the shaft the elevator rose to the first floor and plaintiff fell off and was injured. Its rise has been described in the record variously as " fast "; as " at a fair rate of speed "; and as " on slow speed ". A witness for plaintiff estimated that at the time plaintiff fell, the elevator had risen from two to ten feet.

There is no dispute whatever in the record that at the time the elevator moved it was fully in the possession of plaintiff's employer Barlow-Meagher and exclusively in the control of the employees of that defendant being used solely in the prosecution of its work of cleaning the shafts. One employee was in charge of its operation; another employee was in charge of its mechanical maintenance.

The Barlow-Meagher employee-operator had died before the trial. Plaintiff's son who was the Barlow-Meagher labor foreman on the job testified to some very carefully limited visual observations. He said that when he got off the elevator it was "at a standstill"; that he looked at the operator who was then sitting on a box in the elevator "about a foot or two" from the operating device and not touching it and "facing right at me". This was when he stepped off. But when "the car went up" all the witness actually testified he observed about the operator was that he did not "see the operator do anything at that time."

There is some other proof that the workmen did not see the operator touch the control, and one witness testified that he saw that the operator did not move the control; but there is abundant proof, on the other hand, that the operator used the controlling device to bring the car to a stop, after it had thus started, at the first floor.

The plaintiff's son also testified that as labor foreman he had directed the men working under him to move the elevator up to the top of the shaft when they had finished their work and that their work was almost finished when he left the elevator. Throughout the process of the work on the shaft the elevator had been moved by Barlow-Meagher employees in aid of their work in the shaft. There is proof that it was expected that the elevator would presently move upward when the work, then nearly done, was complete but that no signal had been given.

The theory of plaintiff's recovery against defendant Otis Elevator is that the elevator was in a defective condition when it was loaned to plaintiff's employer and that the defect caused the elevator to rise in the shaft and the plaintiff to fall. We regard it as a fair description of the record before us to say that there is no substantial evidence upon which it could be found that the movement of the elevator was due to a defect of any kind. And the control of the equipment at the time of the accident was so completely in the hands of the plaintiff's employer that if its movement was negligent the negligence was that of the employer.

One of the claimed defects on which plaintiff's theory is based is that the City of New York some months before the accident, and at a time when the elevators were in control of Gimbels store, had " charged " a " violation " of regulations in respect of hoist cables which the city inspector regarded as worn; but there is no proof that the elevator company knew of this claimed violation or that the claimed violation or the purported condition of the cables had any association whatever with the movement of the elevator to which plaintiff attributes his accident.

There is some other general proof about the condition of the brake and of circuit jumpers and a " broken " auxiliary contact block. But none of these conditions has been shown to have had any possible association with the movement of the car complained of here. The argument that somehow they ought to be deemed to have been a cause of its movement is left to the sheerest speculation. Not the slightest proof is in the record that anything existed about this elevator which would have caused the elevator company to anticipate in the exercise of reasonable care that it would have moved upward without the operator's intervention.

The putting together of a chain of conditions not shown to have association with the occurrence and which in their total effect rest quite entirely on speculation does not lift this case out of the rule which has long prevailed in New York that speculation is not a substitute for proof when it is sought to attribute blame for an unexplained accident. A leading authority is *Welsh* v. *Cornell* (168 N. Y. 508). There a metal clamp broke and fell injuring plaintiff but no defect to which such breakage, fall and consequent injury could be reasonably attributed was established and the complaint was dismissed.

The unexplained movement of a power press in the control of the plaintiff's employer was not sufficiently attributed to the manufacturer to warrant a recovery in *Herbert* v. *Rockwell Mfg. Co.* (279 App. Div. 926). The case is very similar to the one now before us; but there was proof, more favorable to plaintiff there, that springs were defective which might allow the press to repeat its motion without intervention. The press had worked before and after the accident without occurrence of the movement there complained of. The movement of the Pontiac automobile with hydramatic transmission without apparent cause was held not sufficiently attributable to the manufacturer to require it to answer in damage to the owner who was injured in *Jastrzembski* v. *General Motors Corp.* (100 F. Supp. 465).

Although the action over between the defendant and the third-party defendant would be academic if the judgment now to be entered remains the final judgment, we feel required for the purpose of settling the form of our order to deal also with that part of the case in the event further appellate proceedings may make decision necessary. We regard the verdict based on a claimed fraud in the execution of the third-party defendant's agreement to indemnify the third-party plaintiff to be strongly against the weight of the evidence. The third-party defendant claimed on the trial both that the defective condition of the elevator was misrepresented when the agreement was signed, and that it was then accurately represented, i.e., third-party defendant was told of a defective condition before the accident occurred.

The party charging fraud was required, therefore, to disavow the agreement without going further with the use of the elevator; or going on with it after it had acquired knowledge, it waived the purported misrepresentation. A direction should have been made for a verdict in favor of the third-party plaintiff. The order should reflect our view on the facts that this would have been our decision on that branch of the appeal had we considered it necessary to reach that question. (Cf. Civ. Prac. Act, § 602, *et seq.*)

The judgment should be reversed and judgment directed for the defendant dismissing the complaint, with costs against both respondents. Settle order on notice.

Peck, P. J., Callahan, Bastow and Botein, JJ., concur.

Judgment unanimously reversed, with costs to the defendant-appellant, and judgment is directed to be entered in favor of the defendant-appellant dismissing the complaint herein, with costs against both respondents. Settle order on notice. [See *post,* p. 861; 284 App. Div. 804.]