DANIEL O'CONNOR, Respondent, *v.* 595 REALTY ASSOCIATES, Appellant.

First Department, April 15, 1965.

*William F. McNulty* of counsel (*George J. Conway*, attorney), for appellant.

*Herbert L. Fine* of counsel (*David Fox* with him on the brief; *Isaacson, Robustelli & Fox*, attorneys), for respondent.

RABIN, J. In this personal injury action defendant appeals from a judgment entered in plaintiff's favor in the amount of $75,369.80 after a jury trial.

The plaintiff was an employee of Equitable Housecleaning Contractors, Inc., an organization which, pursuant to contract, furnished elevator operators and cleaning personnel for the office building owned by the defendant at 595 Madison Avenue

in Manhattan. The plaintiff had been working in the building in the capacity of a night elevator operator for about two weeks prior to the occurrence of which complaint is made.

On August 17, 1962 plaintiff arrived at the building at about 5:30 P.M. He was due to commence work at 6:00 P.M. Upon his arrival he was told by one Tanzillo (the "head starter" on the night shift, and an employee of Equitable) that he and a co-worker, McCaffrey, were to operate elevators Nos. 6 and 8 for the removal of debris from the upper floors. Tanzillo gave plaintiff the generator keys, without which the current to run the elevators could not be turned on. At this time both Tanzillo and plaintiff observed that the master panel board on the main floor indicated that the elevator cars were at the basement level. It had been the practice for the day elevator operators at the end of their shift to bring the cars to the basement level, turn off the car lights, turn off the current with the generator keys and leave the hoistway doors partially open.

Plaintiff left the main floor, changed into his work clothes and proceeded to carry out his instructions. He first activated elevator No. 6. He then crossed the corridor to the elevator No. 8 — the scene of the accident.

The door of that elevator was open for a distance of about three feet. He opened the door further, stepped through the hoistway door and fell 12 feet to the bottom of the shaft. He testified that he expected the elevator car to be at the basement level but did not notice that the car was not there because it was "pitch black". As a result of the fall he sustained serious injuries for which the jury awarded him $75,000.

The elevators involved were of a semiautomatic type designed for use by an operator. To move the car in the hoistway the operator would have to turn on the electric current by means of the generator key, press the button for the appropriate floor and then move a handle that would activate the elevators. The car would then move in either an upward or downward direction, depending upon which button had been depressed. By the nature of the interlock system employed, the car could not move unless all the doors along the elevator hoistway were closed. There was, however, an emergency method whereby the car could be moved even though one or more of the hoistway doors were open. Each car contained emergency release buttons which if depressed and continuously held in the depressed position would permit the car to be moved. To discourage the use of such release buttons, except in an emergency, section C26–921.0 of the Administrative Code of the City of New York

provided that they be covered with a plate glass which could be broken if the occasion arose for their use.* ·

Upon moving the car from a particular floor through the use of the handle in the normal course of operation, the car and hoistway doors on that floor would close automatically and remain in a closed position until the car returned to that floor. However, there was a method of opening the hoistway doors from the outside on any floor even though the car was not at that particular floor. That could be accomplished by the use of a special " key " which ordinarily was reserved for emergencies.

The plaintiff charges that the defendant was negligent in two respects. First, he contends that the emergency buttons were not covered with glass as required by the code. Secondly, he charges the defendant with negligence in failing to adequately light the area in the hoistway beyond the elevator doors. As to the first, evidence that the emergency buttons were uncovered was uncontroverted. And, as to the second, sufficient proof with respect to inadequate light was offered to create an issue for the jury. Thus the defendant could have been found to have been negligent on either theory.

Of course, to merely find the defendant guilty of negligence, without more, does not justify casting the defendant in liability. Before such liability can be imposed it must be proven that such negligence was the proximate cause of the occurrence that resulted in plaintiff's injuries. And, since it is impossible on this record to determine which act of negligence served as a basis for the jury's finding of liability, the record must contain proof sufficient to permit a finding that each of the acts of negligence was the proximate cause of what occurred. Thus, if liability on both the failure to cover the release buttons with glass, and the failure to supply adequate lighting cannot be supported, the verdict may not stand. (*Hansen* v. *New York City Housing Auth.*, 271 App. Div. 986; *Tumbarello* v. *City of New York*, 269 App. Div. 847; *Rogers* v. *Burke*, 229 App. Div. 361.)

Let us determine, first, whether the record could support a finding that the failure to cover the release buttons with glass was the proximate cause of the accident. In order to support

* Section C26–921.0 no longer provides that the emergency release be covered with glass, because it is now required that a key-operated emergency switch be employed rather than the button type with which we are here concerned. However, the former section C26–921.0, in effect at the time this elevator was constructed, did contain that requirement. Both sides took the position that the former section applied in this case. The jury was so instructed without objection, and there has been no deviation from that position by the parties on this appeal.

such a finding, proof would be required that the basement doors were left open after the elevator was moved from the basement floor through the use of the emergency release buttons rather than in the normal way. If it were moved in a normal way the door would have closed when the elevator left the floor.* However, if it were moved through the use of the release buttons, the elevator could have departed from the basement floor leaving the door open. If it were proven that the latter method were employed then it could then be said that the failure to cover the release buttons with glass was the proximate cause of the accident.

However, what proof is there to establish that the elevator was moved through the use of the emergency buttons? An examination of the record indicates that the plaintiff relies for such proof upon the testimony of his elevator expert, Hochstrasser, who offered the conclusion that the elevator was moved through the use of the release buttons. It is difficult to see how he arrived at that conclusion when he conceded that the basement door could have been opened with the emergency "key" after the elevator had been moved in a normal manner. Such possibility cannot be ruled out because there was a lapse of 25 minutes between the time the indicator placed the elevator on the basement floor and the time the accident occurred. In such circumstances his conclusion that the door was left open in one way rather than the other is pure speculation and conjecture. If the jury depended on that testimony for its verdict, such verdict may not stand because a jury may not depend upon testimony based upon speculation as to the manner in which the accident took place. Nor may the jury itself speculate as to what occurred. (*Welsh* v. *Cornell*, 168 N. Y. 508; *Kelly* v. *Otis Elevator Co.*, 283 App. Div. 363, 367, affd. 308 N. Y. 805.)

As a result we must conclude that a finding that the absence of a glass covering over the emergency buttons was the proximate cause of the accident is insupportable. And, as indicated, since the jury might have rested its verdict on this act of negligence, the verdict may not stand. (*Hansen* v. *New York City Housing Auth., supra*; *Tumbarello* v. *City of New York, supra*; *Rogers* v. *Burke, supra*.)

In any event, it was error for the court to permit the expert to testify that the elevator was moved by the use of the release buttons. It was not for the expert to draw that conclusion. Rather, it was for the jury to make such a finding if the evidence

---

* There is no dispute but that the automatic features of the elevator were at all times operating normally.

permitted. The expert's function in this case was to give the jury the necessary technical information as to how the elevator operated, and in what circumstances the basement door could have been found open though the elevator car was not at the floor. His function was to tell how the accident might have happened and not how it did happen. If it were possible to arrive at a conclusion free from speculation as to how the accident happened, it was the jury's function to do so rather than the expert's. The error in permitting such testimony could have been most prejudicial if the jury gave it any weight, and, consequently, the verdict must be set aside on that ground, if for no other reason.

We need not here consider whether jury findings that the basement floor was, in the circumstances, inadequately lighted or that the plaintiff was free of contributory negligence could be supported. Some of the court believe that in all the circumstances, a finding that the place of entrance to the elevator shaft was pitch dark would be against the weight of evidence, as would the finding that the plaintiff was free from contributory negligence. However, for the reasons heretofore given, a reversal and a new trial are mandated without the necessity of our reaching such conclusions.

Moreover, even if a new trial were not required by reason of the foregoing the verdict should be set aside because of serious infirmities in the charge. It was error to instruct the jury that the defendant " owed to the plaintiff the duty to conform with custom, usage and prevailing practice with respect to the maintenance and operation " of the elevators. While evidence of usage and custom may be considered in determining the duty of care to be imposed, it is not necessarily the precise measure of such duty (*Shannahan* v. *Empire Eng. Corp.*, 204 N. Y. 543, 550).

In addition, it should be observed that the charge was too general in that it failed to relate the applicable law to the facts of the case. It therefore did not give the jury the guidance that the law requires. (See *Arroyo* v. *Judena Taxi*, 20 A D 2d 888; *Molnar* v. *Slattery Contr. Co.*, 8 A D 2d 95, 100.) Likewise, the trial court failed to point to the relevance of the various provisions of the Administrative Code, the Labor Law and the Rules of the Board of Standards and Appeals, which it read to the jury. Many of these provisions had no direct relationship to the issues. Those that were relevant were not tied to the factual issues presented.

Accordingly, the judgment appealed from should be reversed, on the law, and a new trial ordered, with costs to abide the event.

BREITEL, J. (dissenting). I would affirm. The requirement for the safeguarded emergency button was designed to prevent the kind of accident which occurred. It thus renders unnecessary further speculation of how the elevator could have been moved without the doors being closed. With respect to the corridor lighting the photographs reveal that the nearest light was obstructed by an overhead conduit between it and the shaftway in question.

The charge was general, but no exception was taken on that ground. To be sure the court should not have charged that defendant was bound to observe custom and usage but in the context of the whole case this was not significant. Given the undisputed assignment of negligence with respect to the emergency button, and the arguable negligence with respect to the light insufficiency in the corridor, the result with the jury would have been the same.

Accordingly, I dissent and vote to affirm the judgment and verdict in favor of plaintiff.

BOTEIN, P. J., McNALLY and STEUER, JJ., concur with RABIN, J.; BREITEL, J., dissents in opinion.

Judgment reversed, on the law, and a new trial ordered, with $50 costs to abide the event.