■ ANNA C. POLATSCHEK, as Administratrix of the Estate of BERNARD POLATSCHEK, Deceased, Respondent, et al., Plaintiff, v. CITY OF NEW YORK et al., Appellants-Respondents, and TRIO INDUSTRIES, INC., Appellant. CITY OF NEW YORK, Third-Party-Plaintiff, v. SCHUMACHER & FARLEY PLUMBING AND HEATING, INC., Third-Party-Defendant.— In a consolidated wrongful death action each of the defendants appeals from so much of a judgment of the Supreme Court, Queens County, entered November 17, 1970, as was in favor of plaintiff's administratrix and against them in the sum of $70,000. In addition the city appeals from so much of the judgment as dismissed its third-party complaint against Schumacher & Farley Plumbing and Heating, Inc., while the defendant additionally also appeals from so much of the judgment as awarded the city judgment over against it, and defendant Trio appeals from so much of the judgment as awarded both the city and Caristo judgment over against it. Judgment modified on the law insofar as appealed from, by (a) striking out so much of its first decretal paragraph as adjudged that plaintiff recover against Caristo Construction Corp. and Trio Industries, Inc., and plaintiff's complaint with respect to them is dismissed, (b) striking out the entire second and third decretal provisions relating to the recoveries under the cross complaints and such cross complaints are dismissed, and (c) striking out so much of the fourth decretal provisions as awarded plaintiff six cents against Caristo Construction Corp. and Trio Industries, Inc. As so modified, judgment affirmed, with one bill of costs to defendants Caristo and Trio against plaintiff-respondent. Plaintiff's intestate, Bernard Polatschek, died as a result of "asphyxia by inhalation of carbon dioxide followed by submersion" in a sump pit in the basement of a building under construction. The city was acting as its own general contractor and had the power and duty "in the first instance to inspect, supervise, and control the performance of the work". Caristo was a prime contractor for the city for the general construction of the building, and Trio Industries was a subcontractor of Caristo for the installation of ornamental sheet metal work in the building, including the installation and cleaning of all the aluminum window frames in the building. Schumacher, who employed Polatschek, was the plumbing contractor; its job was to fabricate pipe, connect certain storm drains from the yard to a wet sump pit in the basement of the building under construction, connect a pipe line from the wet sump to a pump and from there to a public sewer, and to install a metal ladder in such wet sump pit. Essentially, the wet sump pit was a hole about eight square feet, and about eight feet deep, completely enclosed at the top, except for a steel cover about 30 inches square, which could be removed to permit entrance into the pit. The pit was connected with the outside drains in the yard of the almost completed building (a library). The sump was designed to receive rain water which entered the storm drains in the yard and from the runoff of two drains on the roof. When the water in the pit reached a certain level (approximately three or four feet), it automatically activated a pump which discharged the water in the pit into the city sewer. Plaintiff's intestate was overcome by carbon dioxide fumes while trying to install a metal ladder in the wet sump pit. In the main, plaintiff alleged that the city and Caristo failed to provide Bernard Polatschek with a safe place to work under section 200 of the Labor Law and charged Trio with negligently allowing a cleaning fluid it was using to get into the sump pit, thereby creating the carbon dioxide fumes which caused his death. In our opinion, there is no satisfactory proof in the record as to what in fact caused the carbon dioxide in the pit to form. A chemist employed by the New York City Bureau of Water Pollution Control testified that on the day following the death of plaintiff's intestate he took a

sample from the water in the wet sump pit. His tests revealed that the sample contained a substance similar to both the Salvarsol cleaning compound used by Trio and the thinner apparently used by the painting contractors to thin their paints. Both Salvarsol and thinner could have undergone chemical changes to form the carbon dioxide gases in the pit. The chemist could not tell which one or even be sure if either substance did in fact produce the gases in the pit for the simple reason that he made no tests with such object in mind. He sought only to ascertain which materials on the construction site could be found in the sample taken from the pit. The absence of competent proof to identify the cause of the carbon dioxide is glaringly evident when the record shows that the last day Trio's employees were at the construction site was some 11 days before Polatschek met his fate in the pit. According to weather bureau statistics, over one-half inch of rain fell in the vicinity of the construction site between the time Trio's employees last worked on the construction site and the time Polatschek entered the pit. Plaintiff failed to show whether or not the run-off of such rainwater could have accumulated in the sump pit to such a level that both such water and whatever chemicals Trio's employees may have negligently caused to accumulate in the pit, if any, would have been pumped into the public sewer system by the automatically activated pumps. In this regard we note that a painting contractor was at the construction site as late as four days before Polatschek met his death and during those four ensuing days no rainfall fell. On the facts of this case we believe the jury was allowed to speculate as to what caused the carbon dioxide fumes to form in the pit. " Speculation is not a substitute for proof when it is sought to attribute blame for an unexplained accident " (*Kelly* v. *Otis Elevator Co.*, 283 App. Div. 363, 367). With respect to plaintiff's causes of action against Caristo and the city on a section 200 Labor Law theory, we note only that the city and not Caristo was the general contractor of the building under construction and in this case the city and not Caristo was under a nondelegable duty to provide plaintiff's intestate with a safe place to work (*White* v. *Long Is. Lighting Co.*, 32 A D 2d 792). Furthermore, as we pointed out in *Seigel* v. *Prima Concrete Const. Corp.*, (27 A D 2d 946), an aspect of such duty is the detection of dangers discoverable by reasonable diligence. (See, also, *Smullen* v. *City of New York*, 28 N Y 2d 66.) There is evidence in the record of this case that the city's on-the-job plumbing inspector was informed that a "black substance" was floating on the water in the pit. While there was also conflicting evidence as to whether an odor was emanating from the pit and whether the city's inspector did in fact advise plaintiff's intestate to stay out of the pit until it was safe, it is apparent from the jury's verdict that the conflicting evidence was resolved in plaintiff's favor. In regard to the city's third-party complaint against Schumacher based on an indemnity clause in the contract between the parties, we find it necessary to state only that the city's position at bar is in no way comparable to that of the Shell Oil Company in *Levine* v. *Shell Oil Co.* (28 N Y 2d 205). At bar Schumacher contracted to indemnify the city where the city was held liable for the claims against it resulting from the "negligence or carelessness of the contractor [Schumacher] " and such clause did not obligate indemnitor at bar, as in Levine, to provide indemnification for liability occasioned by the indemnitee's own wrong (i.e., violation of section 200 of the Labor Law). In sum, we feel that with the exception of liability on the part of the city for violation of section 200 of the Labor Law, plaintiff failed to prove its case against any of the other defendants. Rabin, P. J., Hopkins, Munder, Gulotta and Brennan, JJ., concur.