Cheryl T. MINOTT, Administratrix of the Estate of Paul F. Minott

v.

F. W. CUNNINGHAM & SONS and Otis Elevator Company of Maine, Inc. and Otis Elevator Company of New Jersey, Inc.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1980.

Decided April 28, 1980.

---

Hewes, Culley, Feehan & Beals, Peter W. Culley (orally), Marcica F. Sawin, Portland, for plaintiff.

Richardson, Tyler & Troubh, Harrison L. Richardson (orally), S. Peter Mills, III, Wendell G. Large, Portland, for F. W. Cunningham & Sons.

Norman & Hanson, Stephen Hessert (orally), David C. Norman, Theodore H. Kirchner, Portland, for Otis Elevator Co.

Before WERNICK, GODFREY and GLASSMAN, JJ., and DUFRESNE, A. R. J.

GLASSMAN, Justice.

The appellants, Otis Elevator Company of Maine, Inc. and Otis Elevator Company of New Jersey, Inc., herein referred to jointly as "Otis,"[1] appeal from a judgment entered as amended on December 10, 1979, following a jury trial in the Superior Court, Cumberland County. The jury awarded the appellee, Cheryl Minott, $44,825 in compensatory damages for the wrongful death and conscious pain and suffering of her husband, Paul Minott. Otis argues that the presiding Justice erred in two evidentiary rulings, in his instructions to the jury and in his denial of motions for judgment notwithstanding the verdict and for a mistrial. We affirm the judgment.[2]

Paul Minott died from injuries he received on July 20, 1972 in a fall down an elevator shaft in a Portland building owned

---

1. Both corporations were named as defendants and served with copies of the complaint. Because it was unclear which, or whether both, of the similarly named corporate defendants answered and defended the action, this Court remanded the case for clarification of the docket. On December 10, 1979, the Superior Court amended its prior judgment to reflect a judgment against both elevator companies jointly and severally. Apparently one counsel represented both corporate defendants throughout the proceedings. Because of their identity of interest and for the sake of simplicity, we, like the parties below, will treat both corporations as one party for the purposes of this appeal.

2. The appellee has abandoned a cross appeal that she filed in this action.

The jury returned a verdict in favor of F. W. Cunningham & Sons, a codefendant in the action. Because the appellee has abandoned her cross appeal and no cross claim exists between Cunningham and Otis, Cunningham has no interest in the outcome of the present appeal and was informed at oral argument that it was not a proper party to this appeal.

by his employer, Associated Hospital Services (AHS). Prior to the time of Minott's death, AHS had commissioned F. W. Cunningham & Sons (Cunningham), a general contractor, to perform extensive renovations in the building. Otis had subcontracted to convert a freight elevator in the rear of the building into an elevator suitable for passenger service and to install another elevator in the building.

Otis began work on the alteration of the rear elevator in March of 1972, removing the original biparting hoistway doors, the call buttons which directed the elevator to each floor and the door interlocking devices which prevented the hoistway doors from opening unless the elevator car was at the landing and the car from moving unless the doors were closed. Otis installed a smaller, passenger-sized door frame and sill at each landing. In late March, Otis' employees went on strike and work on the rear elevator was not resumed prior to Minott's death. As a temporary measure during the strike, Cunningham removed plywood barriers that it had placed against the open entrances to the shaft and installed at each landing a swinging hoistway door made of plywood. Cunningham equipped each door with a self-closing mechanism and with a lock which could be opened by a key whether or not the elevator car was present at that level. Cunningham then used the elevator to transport building materials.

AHS moved its operations into the building in late June of 1972 and received from Cunningham the two keys to the rear elevator. Minott, a mail clerk for the office services department of AHS, was given one of these keys because he needed to use the elevator to transport a mail cart from floor to floor several times a day to pick up and to deliver mail throughout the building. On the day of the accident, Minott had taken the elevator to the third floor to deliver mail. While Minott was on that level, another AHS employee used the elevator to transport some items from the basement to the fourth floor. Minott then returned to the elevator with his mail cart, unlocked the door and stepped into the empty elevator shaft.

Following trial, the jury by special verdict determined that Minott, Cunningham and Otis were each guilty of negligence which proximately caused the death and that the negligence of Minott was equal to that of Cunningham but less than that of Otis.[3] Accordingly, the Superior Court entered judgment against Otis and for Cunningham.

I

During the direct examination of Ellis Hanson, the manager of Otis, he was asked to relate to the jury what John Doyle, Cunningham's foreman, had told him in a telephone conversation, which occurred dur-

---

3. The case was presented to the jury on the theory that the fault of the deceased should be compared with the fault of each defendant separately rather than with the combined fault of the defendants jointly. No issue is raised on this appeal concerning the propriety of submitting the case to the jury on the theory that in order for the plaintiff to recover against a particular defendant the jury must find the fault of that defendant greater than the fault of the deceased. We therefore express no opinion as to whether that theory is in accord with our comparative fault statute. *Compare* 14 M.R.S.A. § 156 *with* Mass.Ann.Laws ch. 231, § 85 (Michie/Law. Co-op 1974). Courts construing modified comparative negligence statutes differ on the question whether the fault of the plaintiff should be compared with the combined fault of all defendants, *e. g., Riddell v. Little,* 253 Ark. 686, 688–89, 488 S.W.2d 34, 36 (1972); *Graci v. Damon,* 78 Mass.App.Adv.Sh. 273,

——, 374 N.E.2d 311, 316–18 (interpreting Massachusetts statute prior to 1974 amendment), *aff'd,* 78 Mass.Adv.Sh. 3129, 383 N.E.2d 842 (1978) (rescript), or with the individual negligence of each defendant, *e. g., Rawson v. Lohsen,* 145 N.J.Super. 71, 77, 366 A.2d 1022, 1024–25 (1976); *Stannard v. Harris,* 135 Vt. 544, 545, 380 A.2d 101, 103–04 (1977); *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 536, 252 N.W. 721, 727 (1934), *questioned in May v. Skelley Oil Co.,* 83 Wis.2d 30, 38, 264 N.W.2d 574, 578 (1978). *See generally* 57 Am. Jur.2d *Negligence* § 434 (1971); Annot., 8 A.L. R.3d 722, 726–31 (1966) (collecting cases); Note, *Comparative Negligence and Comparative Contribution in Maine: The Need for Guidelines,* 24 Me.L.Rev. 243, 245–48 (1972). In the instant case, only under the latter view could the defendant Cunningham have secured a judgment in its favor against the plaintiff.

ing the period of the strike, in late April or early May of 1972. The presiding Justice sustained an objection to admission of this evidence on the ground of hearsay. Otis then made the following offer of proof:

Doyle: "I want to use the elevator." or "Can we use the elevator."

Hanson: "I don't think you should."

Doyle: "What if we install swinging doors."

Hanson: "I don't think that's a good idea, but if you want to do that you had better check with the State Elevator Division."

Otis contends the presiding Justice erred in excluding this conversation because it was offered for the non-hearsay purposes of showing that Cunningham had notice of the risk of using the uncompleted elevator and that Otis had no knowledge of the elevator's use and did not authorize its use. Otis also maintains that the evidentiary ruling constituted prejudicial error because the excluded testimony was of crucial relevance to its position at trial that it was not in control of the elevator at the time of Minott's death. It is clear that the admission of this evidence to show notice, lack of knowledge and lack of authorization was not barred by the operation of the hearsay rule because the extrajudicial statements were not offered for their truth. See M.R.Evid. 801(c).

■ Even though the proffered testimony was improperly excluded as hearsay, the error of the presiding Justice did not prejudice a substantial right of Otis. See M.R. Evid. 103(a). "Prejudicial injury occurs only if the evidence excluded was relevant and material to a critical issue and if it can with reason be said that such evidence, if admitted, would probably have affected the result or had a controlling influence on a material aspect of the case." Towle v. Aube, Me., 310 A.2d 259, 264 (1973).

Here, Cunningham's notice of the risk was clearly established by evidence that it had installed the plywood doors, had equipped the doors with locks and had permitted use of the elevator in that condition. The excluded statements are at best ambiguous on the issue of knowledge. Even if the statements showed a lack of knowledge, they would have only a cumulative effect because Hanson testified that Otis never knew the elevator was being used. Similarly, Otis cannot claim that the excluded testimony prejudiced its ability to show that it had not authorized Cunningham to use the elevator because the presiding Justice *allowed* Hanson to testify that Otis had never given Cunningham such permission. Furthermore, whether Otis knew of, or permitted, the use of the elevator in late April or early May is only marginally relevant to the issues of knowledge and authorization at the time of the accident in July. Otis' employees returned to the job site ten days before the accident, and one employee testified that he saw Minott using the elevator. The rebuttal impact of the excluded evidence would therefore be slight. Because the proffered evidence was marginally relevant and largely cumulative on the material issue of control, the exclusion of this evidence did not constitute prejudicial error.

II

Over the objections of Otis at trial, two witnesses who were state elevator inspectors in 1972 testified that the customary practice within the elevator industry at the time of the decedent's death was for the contractor who was performing the renovations to maintain care, custody and control over the elevator until the completion of the work. On appeal Otis contends the presiding Justice erred in admitting this testimony on the grounds that the testimony was irrelevant, that the witnesses were incompetent to testify on the issue of control between contractor and subcontractor, that the subject matter was not a proper area for expert testimony because it did not involve specialized knowledge and was not helpful to the jury and that the testimony was unduly prejudicial because the issue of who had control over the elevator at the time of the accident was crucial to its case.

■ As with determinations of relevance and the balancing of probative value against prejudicial effect, preliminary ques-

tions concerning the qualifications of experts and the permissible areas of expert testimony are committed to the sound judicial discretion of the presiding Justice. M.R.Evid. 104(a); *e. g., Parker v. Hohman*, Me., 250 A.2d 698, 702 (1969). The exercise of this discretion will not be disturbed absent a clear abuse of discretion or an error of law. *E. g., State v. Libby*, 153 Me. 1, 8, 133 A.2d 877, 881 (1957).

▉▉▉ Traditionally, courts prohibited witnesses from giving an opinion or conclusion on an ultimate fact in issue in a case. *E. g., State v. Libby, supra*, 153 Me. at 9, 133 A.2d at 882; *Starkey v. Lewin*, 118 Me. 87, 88, 105 A. 858, 859 (1919); *United States v. Spaulding*, 293 U.S. 498, 506, 55 S.Ct. 273, 276, 79 L.Ed. 617 (1935). This "ultimate issue" rule was predicated on the theory that allowing such testimony usurped the function of the fact finder, creating the danger that the opinion of an expert or other influential witness would be given dispositive weight by the jury. *See generally* C. McCormick, Handbook of the Law of Evidence § 12 (2d ed. E. Cleary 1972). The rule has been criticized as "unduly restrictive, pregnant with close questions of application and the possibility of misapplication, and often unfairly obstructive to the presentation of a party's case," *id.*, and its use as a blanket prohibition has been largely abandoned, *see, e. g.*, F.R.Evid. 704. In Maine, the prohibition against testimony on an ultimate issue of fact was removed by our new rules of evidence.[4] Rule 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R.Evid. 704. *See generally* R. Field & P. Murray, Maine Evidence § 704.1 (1976); Field, *The Maine Rules of Evidence: What They Are and How They Got That Way*, 27 Me.L.Rev. 203, 215–17 (1975). The Advisers' Note explains the rationale of Rule 704:

The old rule, here abolished, forbidding an opinion on an ultimate issue to be decided by the jury has been in growing disfavor in recent years. This does not lower the bars to admit all such opinions. Under Rules 701 and 702 opinions must be helpful to the trier of fact and Rule 403 provides for exclusion of time-wasting evidence. Advisers' Note, M.R.Evid. 704.

Under the rule, therefore, an expert witness may state his opinion on an ultimate factual issue in the case so long as his testimony satisfies all the requirements for the admission of expert testimony. Similarly, the rules would allow even a lay opinion on an ultimate fact provided the preconditions to admissibility have been met. An expert witness may be incompetent to give his opinion on an ultimate issue because such an opinion may not involve specialized knowledge and would not be helpful to the jury under M.R.Evid. 702 or because the probative value of the opinion is substantially outweighed by the countervailing considerations of M.R.Evid. 403. Thus, under Rule 704, whether to allow into evidence an opinion on an ultimate issue rests within the sound discretion of the presiding Justice.

▉▉▉ Here, a review of the record shows that both witnesses were experts in the area of elevator safety who testified on the basis of personal knowledge gleaned from many safety inspections. Their testimony was relevant to the issue of control over the elevator at the time of the accident. Counsel for Otis had a full opportunity to cross-examine each witness as to his basis of knowledge, competency and credibility. *See Warren v. Waterville Urban Renewal Authority*, Me., 235 A.2d 295, 303 (1967), *cert. denied*, 390 U.S. 1006, 88 S.Ct. 1249, 20 L.Ed.2d 105 (1968). We cannot say that the presiding Justice abused his discretion in determining that the testimony of these witnesses on the customary practice in the industry concerning the care, custody and

---

4. Nevertheless, the critical role of expert psychiatric testimony on the issue of criminal responsibility mandates a limitation on the broad language of M.R.Evid. 704 for psychiatric opinion testimony concerning the cause of criminal conduct. *State v. Ellingwood*, Me., 409 A.2d 641, 645 n.4 (1979).

control of uncompleted elevators involved specialized knowledge, was helpful to the jury's understanding on the issue of control and was not unduly prejudicial.

### III

In instructing the jury on the principles of comparative fault, the presiding Justice stated that

it was the duty of Paul Minott before and at the time of the occurrence to use ordinary care for his own safety. I have also stated to you, however, that *initially at the inception of this case there was a reasonable inference that he was in the exercise of due care.* It is the duty of the defendants in this case to have convinced you by a fair preponderance of the evidence that he was negligent and that his negligence contributed to the injuries he sustained, and that proof, again, is by a fair preponderance of the evidence, and once that has been done, then the inference is no longer applicable. (Emphasis added).

Having seasonably objected to the emphasized portion of the instruction, Otis argues the reference to a "reasonable inference" was improper and prejudicial because it caused the jury to misapprehend the applicable law, suggesting the defendants had some additional evidentiary burden to discharge apart from the burden of showing the decedent's contributory fault by a preponderance of the evidence.

■ The challenged instruction was an attempt by the presiding Justice to charge the jury under 14 M.R.S.A. § 160 which provides that in wrongful death or survivorship actions

the person for whose death or injury the action is brought shall be *presumed to have been in the exercise of due care* at the time of all acts in any way related to his death or injury, *and* if negligence of the deceased is to be relied on as a defense, *it shall be pleaded and proved by the defendant. Id.* (Emphasis added).

Under the comparative negligence statute, 14 M.R.S.A. § 156, a defendant has the burden of showing the contributory fault of

a plaintiff by a preponderance of the evidence. *Crocker v. Coombs*, Me., 328 A.2d 389, 392 (1974); M.R.Civ.P. 8(c). Defendants in wrongful death or survivorship actions have the same evidentiary burden. In construing the predecessor statute to 14 M.R.S.A. § 160 in *Parker v. Hohman, supra,* 250 A.2d at 700, we noted that the legislature had not intended to impose an additional evidentiary burden on defendants in such actions:

We consider the use of the two terms by the Legislature here not as an attempt to create a pure presumption of law . . . in addition to establishing defendant's burden of proof as to contributory negligence but as an effort to emphasize its intention that no part of that burden of proof concerning contributory negligence should remain with the plaintiff. *Id.*

■ Under principles of comparative fault, a "reasonable inference of due care," like a "presumption of due care," is a meaningless concept. These terms have no independent evidentiary force. It is error for the presiding Justice, when instructing the jury on principles of comparative fault in *any* negligence action, to use a term which suggests that the law imposes upon the defendant any burden other than that of showing by a preponderance the contributory fault of the plaintiff or decedent.

■ In the instant case, however, the error of the presiding Justice is harmless when considered in light of the entire charge on the issue of comparative fault. The presiding Justice carefully emphasized that the defendants' discharge of their burden on this issue would dissipate the "reasonable inference of due care." The total impact of the instruction was that the defendants had only the burden of proving by a preponderance of the evidence that the negligence of Minott was a proximate cause of his death. The jury could not have been misled since it found Minott contributorially negligent and substantially reduced the damage award.

## IV

Otis argues that the presiding Justice erred in denying its motion for judgment notwithstanding the verdict, contending that the evidence, even when examined in the light most favorable to the plaintiff, establishes as a matter of law that the negligence of Otis was equal to or less than that of the decedent and equal to or less than the negligence of Cunningham. In support of this first ground, Otis points to evidence that Minott had notice of the risk and failed to exercise reasonable care in view of the danger. This evidence, it is urged, conclusively shows that the negligence of Minott was the sole intervening proximate cause of his death. In support of its second claim, Otis points to evidence that Cunningham had installed swinging doors with locks at each level, had given AHS personnel the keys to these doors and had sanctioned AHS use of the elevator. Otis maintains that this evidence conclusively establishes that either Cunningham or AHS was in exclusive control of the instrumentality that caused the harm. Since it had no control, Otis argues, as a matter of law it owed no duty to the decedent or, if it did breach a duty, the intervening negligence of Cunningham or AHS was the sole proximate cause of the death.

▮ These contentions appear to confuse the distinct concepts of intervening efficient cause and comparative fault. To the extent that Otis attempts to argue intervening cause sufficient to insulate its negligence, *see, e. g., Johnson v. Dubois,* Me., 256 A.2d 733, 734–35 (1969), the issue is not properly before this Court. The presiding Justice did not instruct the jury on this issue, and Otis did not object to the absence of an instruction concerning intervening cause. *See* M.R.Civ.P. 51(b); *see, e. g., State v. Wilson,* Me., 409 A.2d 226, 229 (1979).

▮ Otis' argument is more properly considered as an attack on the jury determination as to the causal negligence of Otis and the relative fault of the parties. In a

negligence action, a judgment notwithstanding the verdict in favor of the defendant is properly granted "only when no facts exist upon which a jury could infer that a defendant was negligent . . . ." *Lowery v. Owen M. Taylor & Sons,* Me., 374 A.2d 325, 326 (1977). As long as the causal fault of both parties is factually in dispute, " 'it is the sole prerogative of the jury to determine the comparative degrees of fault of each of the parties to a negligence action.' " *Bourgeois v. Hoyt,* Me., 383 A.2d 1095, 1095 (1978) (per curiam), *quoting Lyman v. Bourque,* Me., 374 A.2d 588, 590 (1977).

From the record in this case the jury could have rationally found that Otis breached a duty to exercise reasonable care to protect those foreseeably endangered by the use of the uncompleted elevator and that this negligence was a proximate cause of Minott's death. The record also discloses that the causal fault of each party was factually in dispute. It was therefore the exclusive province of the jury to determine each party's comparative fault. *See, e. g., Lyman v. Bourque, supra,* 374 A.2d at 590. *See also Wing v. Morse,* Me., 300 A.2d 491, 500–01 (1973). The presiding Justice did not err in denying the motion for judgment notwithstanding the verdict.

## V

▮ The wrongful death statute applicable to this action, 18 M.R.S.A. § 2552 (Supp.1972), limited damages to medical and funeral expenses plus "a fair and just compensation with reference to the pecuniary injuries resulting from such death . . . ." In his closing argument, the plaintiff's counsel apparently referred to walking one's daughter down the aisle and to teaching one's child to fix a bicycle and to throw a ball as items of compensable loss for the decedent's wrongful death. Otis objected to these statements as an improper attempt to influence the jury to award damages for loss of comfort, society and companionship, non-compensable injuries

under the statute.[5] Upon the refusal by the presiding Justice to instruct the jury to disregard the remarks, Otis moved for a mistrial, which the presiding Justice denied.

Otis argues that the presiding Justice abused his discretion in denying the motion for a mistrial because the challenged statements were improper and created a substantial likelihood that the jury assessed damages on the basis of sympathy and passion rather than on the evidence. *Cf. Werner v. Lane*, Me., 393 A.2d 1329, 1337 (1978). It is impossible adequately to assess the merits of this claim of prejudicial impact, however, because Otis has failed to make the closing arguments of counsel a part of the record on appeal. There is no way to determine whether the statements were in fact improper, whether the context in which the statements were rendered heightened or diminished their prejudicial effect or whether the closing arguments of opposing counsel adequately clarified any misconception. Therefore, Otis has not met its burden "to support [the] appeal with a record sufficient in content to allow a fair consideration thereof." *Berry v. Berry*, Me., 388 A.2d 108, 109 (1978). Moreover, it is "the duty of the presiding justice, in the exercise of a sound discretion, to determine the prejudicial effect of the offending statement and what corrective measures might be taken." *Quinn v. Moore*, Me., 292 A.2d 846, 851 (1972). Here, the record does show that the presiding Justice informed counsel for Otis that he could in his closing argument correct any misconception engendered by the challenged remarks and instructed the jury that wrongful death damages were limited to pecuniary loss together with medical and funeral expenses and that such damages did not include the loss of comfort, society or companionship.

The entry is:

Appeal denied.

Judgment affirmed.

Cross appeal of the appellee dismissed.

WERNICK and GODFREY, JJ., concurring.

DUFRESNE, A. R. J., dissenting in separate opinion.

DUFRESNE, Active Retired Justice (dissenting).

One Joseph Emerson employed by the State of Maine as chief supervising elevator inspector was allowed to testify as an expert, over the objections of the appellant Otis Elevator Company (Otis), that as of July 20, 1972, immediately prior to the accident to Paul F. Minott, the plaintiff-administratrix's decedent:

"I believe that the elevator contractor [Otis] had care, custody and control of the elevator."

With due respect to my colleagues, this was prejudicial error and an abuse of discretion on the part of the trial court requiring reversal, and, thus, I dissent from the majority opinion in relation to this particular point of appeal. In all other particulars, I do agree with the opinion of Mr. Justice Glassman.

I view the appellant's contention as correct, that the issue—which contractor had control over the elevator at the time of Mr. Minott's accident—was crucial to the question of liability between the plaintiff administratrix and each of the contractor defendants, as well as between the contractors themselves whose respective interest suggested each try to shift full responsibility to the other. In connection with this issue of control, I do believe that Emerson, Cunningham's expert witness, was incompetent to give direct personal testimony on the issue of actual and factual control of the rear elevator as between Otis, the subcontractor, and F. W. Cunningham & Sons (Cunningham), the general contractor, instead of merely testifying to the existing usage and custom in the industry at the time of the incident; Otis' argument that the ultimate factor of specific control over

---

5. The wrongful death statute currently in force, 18 M.R.S.A. § 2552 (Supp.1979–80), authorizes, within specified monetary limits, compensatory damages for the loss of comfort, society and companionship.

the rear elevator was not proper subject matter for expert testimony is meritorious.

As pointed out by Mr. Justice Glassman in the majority opinion, Otis, in March of 1972, did assume control of the rear elevator and had started the work of converting it from a freight elevator into one suitable for passenger service under its subcontract with Cunningham. The record is clear, and the evidence undisputed, that in late March, however, Otis' employees went on strike and work on the rear elevator was not resumed prior to Mr. Minott's fatal accident. The record also shows that at the time of the strike Cunningham took over actual control of the rear elevator, installed at each landing swinging hoistway doors equipped with self-closing mechanism and a lock which could be opened by a key, whether or not the elevator car was present at the particular floor. Cunningham, in furtherance of its own contract with Associated Hospital Services (AHS) to perform extensive renovation to the building, did use the elevator which was then undisputably under its control to transport building materials. After AHS moved into the building in late June, Cunningham delivered to AHS two keys to the rear elevator for the use thereof by its employees in the course of their employment and AHS employees, including Mr. Minott, did use the elevator during the strike by Otis employees and thereafter. The only evidence in the case was to the effect that this use of the elevator by AHS was not authorized by Otis. One witness testified that, after the strike had ended and Otis had resumed work on the front elevator, but before any work was done on the rear elevator and during the period of some six days prior to the Minott accident, he, as well as another Otis employee, had noticed that Mr. Minott was using the elevator. He denied, however, that he became aware that Minott had a routine schedule that he would follow with his cart. The evidence does not disclose how soon before the tragedy did this single observation of Minott's use of the elevator by the two Otis employees take place, nor whether this fact was reported to whoever was in charge for Otis at the time. Furthermore,

Emerson testified that the only use to which the rear elevator could have been put legally during the period of renovation was such operation only as was necessary to perform the work of renovation itself, and that only by the contractors working thereon. Thus, its operation by AHS authorized by Cunningham was without legal sanction, the old state certificate or license to Sears and Roebuck having been suspended automatically when work on the conversion commenced and the new one to AHS not having been issued.

Royal Hoyt, a licensed elevator inspector in the State of Maine, who had observed a set of keys to the elevator hoistway doors in the hands of John Doyle, Cunningham's project superintendent, shortly after the accident to Mr. Minott, was the plaintiff's so-called expert witness who testified as to the practice in the industry, as follows:

"The practice was that any elevator that was undergoing alterations was under the care, custody and control of the contractor that was performing the alterations on the elevator."

\* \* \* \* \* \*

"The accepted practice was that the elevator would be used only by the contractor performing the alterations on the elevator."

On cross-examination, Mr. Hoyt admitted that in his experience as an elevator inspector he had never investigated a case where the subcontractor doing the renovation of an elevator was immobilized by a strike of his employees and the general contractor took over control of the elevator and, prior to the subcontractor's resumption of work on the elevator, an accident happened.

I will concede that Hoyt's testimony in relation to the understanding in the industrial world to the effect that the contractor who has the work of renovation of an elevator assumes the care, custody and control of the elevator from the time when the work of alteration upon the elevator begins was admissible, and that the jury, even though not so informed, would perceive that such was the usual and customary practice under ordinary circumstances.

The existence of a custom or usage in any particular trade must be established as a matter of fact and not of opinion. Any witness having adequate knowledge of the matter is qualified to testify to its existence and the specifics thereof. The opinion of an expert should be confined, however, to the usage or custom itself and should not extend to any implications or liabilities springing from such usage or custom. 32 C.J.S. Evidence § 546(76); 21 Am.Jur.2d Customs and Usages, § 37.

In the instant case, the matter at issue underlying the rights and duties of the parties, here the two contractors, was the issue of control of the elevator at the critical time. The custom or usage in the trade did not involve any scientific or professional skill, such as the methods of treatment by physicians or surgeons, or technical knowledge as may be required in dealing with electrical appliances or the like. _Farmers' Ginnery & Mfg. Co. v. Thrasher_, 144 Ga. 598, 87 S.E. 804 (1916). Which contractor in fact had control of the elevator under all the circumstances of the instant case was a jury question, and its proof depended not upon any particular scientific knowledge or skill of any person proficient in the operation and construction of elevators or in the best means to be used for their safe operation. Such proof could be provided by any person knowledgeable of the custom through observation or otherwise.

It should be observed that the charge dealt in generalities and did not focus upon the facts of the case insofar as the question of control was concerned. It did not give any guidance to the jury respecting the law applicable to the usage and custom in the trade to which one witness testified. Nor did the instructions touch upon the illegal aspect of the operation of the elevator by AHS and Cunningham's authorization thereof. Furthermore, the jury was not informed concerning the respective duties of the general contractor vis-a-vis the subcontractor in relation to their individual or joint control of the elevator, nor regarding Otis' possible duty to assume control following the end of the strike and the time for so doing. The jury was not told what effect knowledge of Minott's use of the elevator by some Otis employees who were not in charge of the renovation project for Otis could play in activating the duty in Otis to resume control of the elevator.

In the face of such inadequacies in the instructions to the jury, Emerson's testimony that he _believed_ that the elevator contractor, meaning Otis, had care, custody and control of the elevator at the time of Minott's fatal fall was crucial and undoubtedly served to fasten the greater degree of fault upon Otis. How else explain the jury's specific percentile finding that Mr. Minott was 30% negligent, Cunningham 30% negligent and Otis 40% negligent? Even though the parties did not object to the charge, nor request specific instructions respecting the reference matters, the submission of the case to the jury, postured as it was on the existence of the usage and custom in the trade respecting control of an elevator under renovation, tied in with Emerson's testimony that Otis had control of the elevator, without adequate instructions as to the effect thereof, was inconsistent with substantial justice and a reversal is in order to protect Otis' right to have the jury consider the facts under appropriate instructions. _Hixon v. Mathieu_, Me., 377 A.2d 112 (1977).

Hoyt and Emerson were competent to testify generally as to the existence of the usage or custom in the trade respecting control of an elevator under renovation as between several contractors concerned with the alteration project, but Emerson's personal conclusion or inference to show the effective result of the usage or custom on the factual conduct of the parties in relation to the subject matter was not competent evidence and was prejudicial error. _Haskins v. Warren_, 115 Mass. 514 (1874); _O'Connor v. 595 Realty Associates_, 23 A.D.2d 69, 258 N.Y.S.2d 145, app. dism. 17 N.Y.2d 493, 267 N.Y.S.2d 213, 214 N.E.2d 376 (1965).

I conclude that the error was highly prejudicial and that there was an abuse of discretion. I would sustain the appeal, va-

cate the judgment and remand for a new trial.