1999 ME 53

Kevin J. GLYNN

v.

**ATLANTIC SEABOARD CORP.**

Supreme Judicial Court of Maine.

Argued Feb. 1, 1999.

Decided April 8, 1999.

John E. Geary, (orally), Falmouth, for plaintiff.

Leonard I. Sharon, (orally), Sharon, Leary & DeTroy, Auburn, for Atlantic Seaboard.

Peter B. LaFond, (orally), Berne & La-Fond, Portland, for Quirino Lucarelli.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Atlantic Seaboard Corporation (ASC) appeals from the judgments entered in the Superior Court (Cumberland County, *Brennan, J.*) on Kevin J. Glynn's claim against ASC for unpaid wages due pursuant to 26 M.R.S.A. § 626 (1988 & Supp.1998) and on ASC's claims against Glynn and Quirino Lucarelli for, inter alia, fraud and breach of a fiduciary duty. The court granted a summary judgment in favor of Lucarelli based on a release executed by ASC. After a jury trial, the court entered a judgment on a verdict substantially in favor of Glynn. With regard to the summary judgment, ASC contends that the release did not shield Lucarelli from liability because it was a product of Lucarelli's fraudulent misrepresentations. Because there is a genuine issue of material fact as to whether the release was a product of fraud, we vacate the summary judgment. With regard to the jury verdict, ASC contends that the trial court erred in excluding prior out-of-court statements by a former ASC em-ployee. We conclude that the court did not commit reversible error by excluding the statements.

## I. BACKGROUND

[¶ 2] In February 1993, Lucarelli and James Michalec formed ASC. Michalec received 51% of ASC's shares and served as the corporation's treasurer. Lucarelli became president and manager of the corporation and, in exchange for approximately $64,-000, received the remaining 49% of ASC's shares. As the manager, Lucarelli was responsible for hiring and paying ASC employees. Glynn performed bookkeeping services for ASC.

[¶ 3] Lucarelli and Michalec agreed to pay ASC employees in cash. In furtherance of this agreement, ASC issued checks to Lucarelli and to Michalec during May and June 1993. Michalec cashed his checks and gave the cash to Lucarelli so that Lucarelli could pay the employees. In one instance Michalec gave the cash to Glynn. Lucarelli reported to Michalec that he had distributed the cash to the employees.

[¶ 4] When ASC failed to make a profit, Lucarelli and Michalec agreed to terminate operations. On June 25, 1993, Michalec bought Lucarelli's share in ASC for $64,385, and Lucarelli resigned as president. As part of the buy-out, ASC, Michalec, and Lucarelli, among others, executed a release in which ASC

> expressly release[d] Lucarelli ... of and from any and all claims, damages and/or causes of action, both at law and in equity now existing or which may result from the existing state of things, which the Atlantic parties ever had, now have, or will have against Lucarelli....

[¶ 5] Within a month of the closing, several former ASC employees claimed that Lucarelli had in fact not paid them. Counsel for Lucarelli later stated in a letter that Lucarelli acknowledged receiving funds from ASC but that Lucarelli did not consider those funds to be wages. At the insistence of the Maine Department of Labor, ASC settled these claims for unpaid wages. The settle-

ment, however, did not include Glynn's claims.

[¶ 6] In 1994, Glynn filed a complaint against ASC claiming that pursuant to 26 M.R.S.A. § 626 ASC owed him $4,722.50 in unpaid wages and an additional $9,445 in statutory damages. ASC filed a counter-claim against Glynn and a third-party complaint against Lucarelli claiming that the two defendants had converted corporate funds to their own use.[1] Lucarelli sought a summary judgment on all counts, contending that the release shielded him from liability.[2] ASC responded by arguing that the release was void as a product of Lucarelli's misrepresentations that he had paid the ASC employees. The court granted Lucarelli's motion for a summary judgment based on the release.

[¶ 7] Glynn's claims and ASC's counter-claims against Glynn proceeded to trial before a jury. The jury found that ASC failed to pay Glynn $40 in wages and awarded an additional $80 in statutory damages. With regard to ASC's counterclaims, the jury found in favor of Glynn on all counts except for breach of a fiduciary duty, for which the jury awarded ASC no damages.

## II. RELEASE

[¶ 8] In reviewing a summary judgment, we view the evidence in the light most favorable to the nonprevailing party. *Gorham Sav. Bank v. Baizley*, 1998 ME 9, ¶ 6, 704 A.2d 398, 400, and will affirm a summary judgment "when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law," *Salvation Army v. Town of Standish*, 1998 ME 75, ¶ 4, 709 A.2d 727, 728. As an extreme remedy, a summary judgment should be granted in favor of the defendant "only when the facts before the court so conclusively preclude recovery by the plaintiff that a judgment in favor of the defendant is the

only possible result as a matter of law." *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 901 (Me.1996).

[¶ 9] ASC argues that there is a genuine issue of material fact as to whether the release was a product of fraud. Specifically, ASC contends that because Lucarelli was an officer of ASC his false representations concerning his payments to the ASC employees coupled with his failure to disclose those falsehoods at the signing of the release constituted fraud.

[¶ 10] Although "a valid release will extinguish a cause of action, the release will nevertheless be set aside if shown to be the product of fraud, misrepresentation, or overreaching." *LeClair v. Wells*, 395 A.2d 452, 453 (Me.1978) (citations omitted); *see also Harriman v. Maddocks*, 518 A.2d 1027, 1030 (Me.1986). Traditionally, a party commits fraud if he "(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the [other] justifiably relies on the representation as true and acts upon it to his damage." *Letellier v. Small*, 400 A.2d 371, 376 (Me.1979).

[¶ 11] The court applied this definition of fraud to the facts and found that although there was ample evidence to establish that "Lucarelli knowingly made a false representation of a material fact that was relied upon by ASC to its detriment," there was no competent evidence that Lucarelli made the false representation for the purpose of inducing ASC to grant him a release. In other words, the court assumed that ASC was required to establish that Lucarelli lied to Michalec for the purpose of inducing ASC to grant him a release. Assuming, without deciding, that this nexus is required, we nevertheless va-

---

1. The counterclaim and third-party complaint averred eight different counts arising from the conversion of the payroll funds: (I) Fraud: (II) Intentional Harm to Property Interest; (III) Breach of Fiduciary Duty; (IV) Intentionally Causing Liability; (V) Breach of Contract; (VI) Information Negligently Supplied for the Guidance of Others; (VII) Commission of Crimes Creating Civil Liability; and (VIII) Violation of

the Racketeer Influence and Corrupt Organizations Act.

2. Lucarelli also contended that he could not be held liable because he was a corporate officer. The court properly rejected this contention because ASC's claim was not for debts of the corporation but for Lucarelli's damage to the corporation.

cate the order because the court's conclusion does not recognize that because Lucarelli was a corporate officer, any failure on his part to disclose at the closing that he did not pay ASC employees would constitute a fraudulent act.

[¶ 12] Where a fiduciary relationship exists between the parties, "omission by silence may constitute the supplying of false information." *Binette,* 688 A.2d at 903 (holding that silence constitutes supplying false information when silence is a breach of statutory duty); *Brae Asset Fund, L.P. v. Adam,* 661 A.2d 1137, 1140 (Me.1995) ("absent a fiduciary or confidential relationship, there is no duty to disclose information"); *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 106, at 738 (5th ed.1984). A fiduciary relationship exists between a corporate officer and the corporation he serves, and the officer "must disclose and not withhold relevant information concerning any potential conflict of interest with the corporation." *Northeast Harbor Golf Club, Inc. v. Harris,* 661 A.2d 1146, 1148 (Me.1995). Given that Lucarelli was a corporate officer of ASC, any failure to disclose a material fact would constitute a false representation. *See Binette,* 688 A.2d at 903. Substituting nondisclosure for false representation, a party with a fiduciary duty to another commits fraud when he (1) intentionally does not disclose; (2) a material fact to the other; (3) for the purpose of inducing the other to act or refrain from acting in reliance on the failure to disclose; and (4) the other justifiably relies on the nondisclosure and acts upon it to his or her damage. *See Fitzgerald v. Gamester,* 658 A.2d 1065, 1069 (Me.1995).

[¶ 13] The evidence, viewed in the light most favorable to ASC, establishes that Lu-carelli told Michalec that he had paid the ASC employees; that Lucarelli had not paid the employees, but converted the funds to his own use; that at the closing—less than a month from the false representation—Lucarelli did not disclose the existence of the outstanding debt to the employees; and that Michalec relied on this nondisclosure and signed the release. The trier of fact could infer from these facts that the nondisclosure was intentional and for the purpose of inducing ASC to grant the release because it occurred at the signing of the release and only weeks earlier Lucarelli had affirmatively misrepresented to Michalec that he had paid the employees. *See Fitzgerald,* 658 A.2d at 1069; *see also Manning v. Dial,* 271 S.C. 79, 245 S.E.2d 120, 122 (1978) (holding that evidence created an inference of fraud where officer of corporation failed to disclose all relevant facts before signing an agreement for the sale of stock which contained a release). Therefore, the court erred in granting Lucarelli's motion for a summary judgment.

### III. PRIOR OUT–OF–COURT STATEMENTS

[¶ 14] At trial, ASC called as a witness former ASC employee Richard C. Campbell. On direct examination, ASC's counsel asked Campbell, "Your testimony today, sir, is from the time that you worked there until the time that the doors closed at Atlantic Seaboard you were never paid?" Campbell responded, "That's correct." In addition, segments of Campbell's testimony suggested that the other ASC employees were not compensated.[3]

[¶ 15] In an effort to impeach Campbell's credibility, ASC attempted to introduce a prior out-of-court statement made by Camp-

---

3. These segments are as follows.
   A. I worked with Mr. Michalec and he said he would pay me. And he said on another day—and I went down to see him again, he said he would pay me another day and on the third day he said, "Sue me."
   Q. He said, "Sue you." And when was this?
   A. Because he wasn't going to pay us.
   . . . .
   Q. Did you go to Mr. Michalec during the time period that you worked at Atlantic Seaboard and ask him where your money was?

   . . .
   A. No, because we took it for granted that we were all working there, that we were going to be paid. We took it for granted, word of mouth.
   . . . .
   Q. Prior to you sending that letter, a lot of you had meetings about what you were going to do about collecting your money: didn't you?
   A. That's right.

bell to Jeffrey Baker, an investigator who served a subpoena on Campbell. During voir dire, Baker, testified that when he delivered the subpoena to Campbell, Campbell stated,

> that this was all a bunch of bull, that he had been hired—he and others had been hired at [ten] dollars an hour under the table to work approximately six hours in the evening while the company was getting going, and that two guys got checks, they cashed them and paid them under the table, and one guy says he didn't get paid. And that's what this whole thing is about, and he wished it would just come to an end.

The court excluded Baker's testimony. ASC contends that the trial court erred because Campbell's out-of-court statement was a prior inconsistent statement admissible to impeach Campbell.

[¶ 16] Even if Campbell's prior out-of-court statement was inconsistent and his impeachment was other than collateral in its significance, *see State v. Marr*, 551 A.2d 456, 458 (Me.1988), the court's failure to allow Baker to testify was harmless error, *see* M.R.Evid. 103. A wrongful exclusion of evidence "will not suffice to cause a reversal unless the party against whom the ruling is made is aggrieved or prejudiced by it." *Towle v. Aube*, 310 A.2d 259, 264 (Me.1973). A party is prejudiced "only if the evidence excluded was relevant and material to a crucial issue and if it can with reason be said that such evidence, if admitted, would probably have affected the result or had a controlling influence on a material aspect of the case." *Id.*

[¶ 17] Because Baker's testimony was cumulative of other testimony, its exclusion was harmless. *See Minott v. F.W. Cunningham & Sons*, 413 A.2d 1325, 1329 (Me.1980); *see also Trott v. McPherson*, 551 A.2d 854, 856 (Me.1988). During trial, an ASC employee named Herbert Haase testified that he was paid by Lucarelli in cash, that he saw Lucarelli "hand ... sums of cash to Richard Campbell," and that Campbell told him that he had been paid. Campbell's out-of-court statement to Haase that he had been paid by Lucarelli directly contradicted Campbell's trial testimony that he had never been paid

for working at ASC. By demonstrating that Campbell told a different story in the past, ASC undermined Campbell's credibility. Baker's testimony would have only presented a separate occasion on which Campbell indicated that Lucarelli paid him. In addition, it is evident by the damage award that the jury believed that Glynn had been paid. As cumulative testimony its exclusion was not prejudicial. *See Minott,* 413 A.2d at 1329.

The entry is:

Judgment in favor of Lucarelli vacated and judgment in favor of Glynn affirmed. Remanded for further proceedings consistent with this opinion.

