STATE OF MAINE                              BUSINESS AND CONSUMER COURT

Cumberland, ss.


ALAN MILLER, individually and in the right of
and for the benefit of SAM Miller, Inc.,

                    Plaintiff

                    v.                              Docket No. BCD-CV-14-36 ✔

STEVE N. MILLER, MARK K. MILLER
and MILLER'S LOBSTER COMPANY, INC.

                    Defendants

SAM MILLER, INC.,

                    Nominal Defendant

### ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Steve Miller, Mark Miller, and Miller's Lobster Company, Inc. (collectively

"Defendants") move this court for summary judgment against the Plaintiff Alan Miller.

Defendants assert that the applicable statute of limitations bars all claims set forth in the

Plaintiff's Second Amended Complaint. Plaintiff, on the other hand, contends that his claims

were timely brought because the statute of limitations has been tolled.

The court elects to decide the Motion without oral argument. *See* M.R. Civ. P. 7(b)(7).

### MATERIAL FACTS

The following summary is taken from the parties' Statements of Material Facts, with

factual disputes noted:

Plaintiff Alan Miller, and Defendants Steve and Mark Miller, are brothers. (Defs.' Supp.

S.M.F. ¶ 1; Pl.'s Opp. S.M.F. ¶ 1.) In 1968, their father, Luther Miller, purchased the wharf

that is at issue in this lawsuit. (Defs.' Supp. S.M.F. ¶ 2; Pl.'s Opp. S.M.F. ¶ 2.) In 1978, Steve

Miller, along with another brother who is not a party to this action, established Miller's

1

Lobster Company, Inc. (Miller's Lobster). In 1992, Luther Miller retired from lobster fishing. At that time, Mark Miller joined his brother Steve Miller as an owner of Miller's Lobster. (Defs.' Supp. S.M.F. ¶ 5; Pl.'s Opp. S.M.F. ¶ 5.) Together they have been the sole shareholders. (Defs.' Supp. S.M.F. ¶ 6; Pl.'s Opp. S.M.F ¶ 6.) Between 1992 and 1997, Miller's Lobster continued to use the wharf and continued to pay the real estate taxes, insurance, and maintenance on the wharf. (Defs.' Supp. S.M.F. ¶ 7; Pl.'s Opp. S.M.F. ¶ 7.)

In 1997, a decision was reached to transfer ownership of the wharf from Luther Miller and his wife to Steve, Alan, and Mark Miller. To take ownership of the wharf, the three brothers formed a new entity known as SAM Miller, Inc. SAM Miller, Inc. was incorporated on September 2, 1997, and each of the three brothers owns 1/3 of the voting shares. (Defs.' Supp. S.M.F. ¶ 8; Pl.'s Opp. S.M.F. ¶ 8.) Plaintiff contends that his brothers have been in control of the corporation by voting their shares together against the Plaintiff. (Pl.'s Addt'l S.M.F.¶ 1; Defs.' Rep. S.M.F. ¶ 1.)

Also on September 2, 1997, SAM Miller, Inc. executed a promissory note in favor of Luther Miller in payment for the wharf, and entered in a lease of the wharf to Miller's Lobster. (Defs.' Supp. S.M.F. ¶ 9; Pl.'s Opp. S.M.F. ¶ 9.) The lease was for a three-year period, ending in 2000. *See* Aff. of Steve Miller, Ex. E, ¶2. Under the terms of the 1997 lease, Miller's Lobster was required to pay all real estate taxes, insurance, and maintenance on the wharf, but was not required to pay rent to SAM Miller, Inc. (Defs.' Supp. S.M.F. ¶ 12; Pl.'s Opp. S.M.F. ¶ 12.) Also in September 1997, Steve, Alan, and Mark Miller also executed a Cross Purchase Plan regarding their ownership interests in SAM Miller, Inc. (Defs.' Supp. S.M.F ¶ 11; Pl.'s Opp. S.M.F ¶ 11.)

Between 1997 and 2005, the Miller brothers paid their respective one-third shares of the SAM Miller, Inc.'s promissory note obligation until it was paid off. (Defs.' S.M.F ¶ 12)

2

Miller's Lobster continued to pay the real estate taxes, insurance, and maintenance on the wharf, and continued to use the wharf without paying rent to SAM Miller, Inc. for its occupation and use. (Defs.' Supp. S.M.F ¶ 11; Pl.'s Opp. S.M.F ¶ 11.)

The 1997 wharf lease expired according to its stated term in September 2000 and was renewed in 2001 by SAM Miller, Inc. (Defs.' Supp. S.M.F. ¶ 13.) Plaintiff was not notified of the 2001 lease renewal. (Pl.'s Opp. S.M.F. ¶ 13.) On May 1, 2004, the lease was again renewed, this time for a period of 15 years.[1] (Defs.' Supp. S.M.F. ¶ 13.) Steve Miller, as president of both SAM Miller, Inc. and Miller's Lobster, executed the 2004 lease on behalf of both corporations. Again, Plaintiff received no notice of the execution of the 2004 lease.

SAM Miller, Inc. entered into the 2001 and 2004 leases without Plaintiff's knowledge or consent. Plaintiff further contends that, because he was not properly notified, and no meeting concerning the corporate decision to renew the lease was held, he did not become aware of the 2004 lease and its fifteen-year term until 2012. (Pl.'s Addt'l S.M.F. ¶ 5.) In 2012, Plaintiff requested, and was provided with, a copy of the 2004 lease renewal. He asserts that only then did he become aware of the terms of that lease.

The Defendants acknowledge that no formal notice of either of the 2001 lease or the 2004 lease was provided to the Plaintiff. (Pl.'s Addt'l S.M.F. ¶ 4; Defs.' Rep. S.M.F. ¶ 4.) However, Defendants contend that the Plaintiff knew or should have known that the 1997 lease had been extended because Miller's Lobster continued to occupy the wharf in accordance with Luther Miller's previous use. (Defs.' Supp. S.M.F. ¶ 4.) They also contend that Plaintiff was aware that Miller's Lobster was using the wharf exclusively and paying taxes and insurance, but not paying rent to SAM Miller, Inc. (Defs.' Rep. S.M.F. ¶ 5.)

---

[1] Apart from duration, the terms of the May 1, 2004 lease were identical to the terms of the September 2, 1997 lease.

3

Plaintiff's response to the Defendants' Statement of Material Facts acknowledges that Plaintiff was "fully aware that Miller's Lobster Company, Inc. has been using the wharf exclusively and paying real estate taxes, insurance and maintenance, and that Miller's Lobster Company, Inc. has never paid any rent to SAM Miller, Inc.", although Plaintiff qualifies his response by adding the phrase "despite increasing the extent of its use in terms of seating capacity and a liquor license." Pl.'s Opp. S.M.F. ¶ 17.

The extent to which Plaintiff was on notice of the 2001 and 2004 leases is a disputed issue of fact that the court treats in a light favorable to Plaintiff as the non-moving party. Accordingly, this Order assumes that Plaintiff had no actual notice of the 2001 or 2004 lease renewals at the time they occurred, and no knowledge of the terms of the 2004 lease until he received it in 2012. On the other hand, it is undisputed that the Plaintiff has known since 1997 that Miller's Lobster has occupied and used the wharf continuously without paying rent to SAM Miller, Inc.

Upon learning of the 2004 lease renewal, Plaintiff requested that the Defendants undertake a more equitable arrangement or take action to cause SAM Miller, Inc. to collect from Miller's Lobster an amount equal to the rent that Plaintiff claims should have been paid over the years. (Pl.'s Addt'l S.M.F. ¶ 13.) Although he contends that SAM Miller received inadequate compensation for use of the wharf under the 1997 lease was inadequate, Plaintiff asserts that the inadequacy has increased over time, given that Miller's Lobster has grown markedly since 1997. (Pl.'s Addt'l S.M.F. ¶ 12.) For example, he asserts that the establishment now encompasses over forty tables and owns a liquor license. (Pl.'s Addt'l S.M.F. ¶ 11.)

On or about August 16, 2013, Plaintiff made demand pursuant to 13-C M.R.S. § 753 (2014) that an action be brought by SAM Miller, Inc. against the Defendants for damages. To

date, no such action has been brought. (Pl.'s Addt'l S.M.F. ¶ 8.) The Defendants refuse to terminate or modify the lease. Plaintiff contends that given the changing nature of Miller's Lobster, the Defendants should make the buyout figure established by previous agreements more equitable because the original agreement was made when the property had a much lower value. (Pl.'s Opp. S.M.F. ¶¶ 10, 13.)

### STANDARD OF REVIEW

To survive a motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau,* 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a factfinder to choose between competing versions of the fact. *See Lougee Conservancy v. CitiMortgage, Inc.,* 2012 ME 103, ¶ 11, 48 A.3d 774. Although parties may differ as to the legal conclusions to be drawn from the record, summary judgment is proper where the material facts are not in dispute. *See S.D. Warren Co. v. Town of Standish,* 1998 ME 66, ¶ 9, 708 A.2d 1019. The court views the evidence in the light most favorable to the non-moving party. *Webb v. Haas,* 1999 ME 74, ¶ 18, 728 A.2d 1261.

### DISCUSSION

The issue before the court is to what extent Plaintiff's claims are time-barred by the statute of limitations. The parties appear to agree that the applicable statute of limitation is six (6) years. 14 M.R.S. § 752 (2014). Generally, "[t]he statute of limitations is an affirmative defense and the burden of establishing the expiration of the limitations period is on the party

5

asserting it." *See Nuccio v. Nuccio*, 673 A.2d 1331, 1334 (Me. 1996) (citing *Kasu Corp. v. Blake, Hall & Sprague, Inc.*, 540 A.2d 1112, 1113 (Me. 1988)); M.R. Civ. P. 8(c).

Defendants contend that under the applicable statute, Plaintiff's claims became time-barred, at the latest, after April 30, 2010, six years after a lease agreement/renewal entered into by SAM Miller, Inc. on May 1, 2004. . Because Plaintiff filed his original Complaint on February 19, 2014, Defendants say this action was commenced almost four years too late. (Defs. Supp. Mot. 4.)

Plaintiff agrees that the six-year statute applies, but he contends that it has been tolled on several different grounds. The Law Court has recognized that the applicable statute of limitations may be tolled based on adverse domination, fraud, and estoppel, all three of which doctrines are advanced in the Plaintiff's opposition to the Defendant's Motion. The court addresses each below. Because each ground for tolling may apply independently of the others, this Order examines all three of the Plaintiff's arguments in opposition.

In the court's view, once the Defendants have made a *prima facie* showing that the statute of limitations applies—meaning a showing that the Plaintiff's claims accrued at a time outside the six-year limitations period—then the burden shifts to the Plaintiff to make at least a *prima facie* showing that the statute has been tolled or for other reasons does not bar his claims.

It must be noted, however, that Plaintiff's tolling argument does not apply to any and all direct claims of the Plaintiff relating to the shareholder buyout agreement—he has known the terms of the buyout agreement since signing of the Cross Purchase Plan.

Accrual of the Plaintiff's Claims

Although not a focus of the parties' briefing, the court deems it appropriate to discuss briefly the threshold question of when the Plaintiff's claims accrued, because the statute of limitations clock does not begin ticking until the claim has accrued. The Law Court has said,

6

"The general test for determining when a cause of action accrues is when plaintiff received a judicially recognizable injury. " *McLaughlin v. Superintending Sch. Comm. of Lincolnville,* 2003 ME 114, ¶ 22, 832 A.2d 782 (internal citations and quotations omitted). Claims for declaratory relief accrue similarly, with the difference that declaratory relief requires a justiciable controversy that may or may not involve actual injury or loss. *See Bog Lake Co. v. Town of Northfield,* 2008 ME 37 ¶¶ 8-9, 942 A.2d 700, 703-04.

Plaintiff's Second Amended Complaint characterizes his claims as being asserted both derivatively, on behalf of SAM Miller, Inc., and in his own name. The Second Amended Complaint allege wrongdoing by the individual Defendants, Mark Miller and Steve Miller, as follows:

- causing Miller's Lobster, a company owned by the individual Defendants, to occupy the wharf owned by SAM Miller, Inc. rent-free pursuant to a series of leases dating back to 1997.

- refusing to cancel or modify the current lease to make it fairer to SAM Miller, Inc.

- refusing to renegotiate the shareholder buyout agreement, the interpretation and enforceability of which are the subject of the individual Defendants' declaratory judgment counterclaim.

Defendants' contention that all of the Plaintiff's claims—derivative and in his own name—are time-barred rests on the fundamental premise that all of the Plaintiff's claims accrued, at the latest, in 2004 when the wharf lease was renewed. Plaintiff's Opposition does not take issue with that premise. Plaintiff argues that this action is timely, not because his claims in fact accrued within the six years before the action was commenced, but because the

7

statute of limitations has been tolled, meaning that, even though his claims accrued more than six years before the action was filed, the statute has not run so as to bar his claims.[2]

Plaintiff's memorandum in opposition also does not contend—nor does it appear—that any of his claims accrued when the Defendants allegedly refused to terminate or modify the lease or to renegotiate the buyout provision of the Cross Purchase Agreement. Assuming it happened, Defendants' alleged refusal did nothing to change the status quo. *See Bog Lake Co. v. Town of Northfield, supra,* 2008 ME 37 at ¶8, 942 A.2d at 703-03 ("The Town's rejection of Bog Lake Company's request to amend the ordinance did no more than preserve the status quo," and thus did not reset the limitations clock).

Accordingly, rather than dwell on legal issues not raised, the following analysis focuses upon the issue raised by the briefs: whether the six-year statute of limitations has been tolled on any one or more of three alternative grounds.

---

[2] Specifically, the Plaintiff does not contend that his direct or derivative claims have accrued within the six-year period prior to the filing of the action under the continuing wrong doctrine, and in fact the doctrine may not apply to these facts. Although the Law Court has recognized the applicability of the continuing wrong doctrine in the context of shareholder derivative claims, *see Forbes v. Wells Beach Casino, Inc.,* 307 A.2d 210, 223-24 (Me. 1973), the court has more recently indicated that the doctrine applies when there is a series of independently actionable tortious acts, *see McLaughlin v. Superintending School Comm.,* 2003 ME 114, ¶23 n.6, 832 A.2d 782, 789 ("The common law continuing tort doctrine may be applied when no single incident in a chain of tort[i]ous activity can fairly or realistically be identified as the cause of significant harm. In such cases, the breach of duty is regarded as a single continuing wrong that terminates when the exposure to the harm terminates) (internal quotes and citation omitted).

Elsewhere, the continuing wrong doctrine has been held not to apply to the performance of an allegedly unfair contract. *See Elster v. American Airlines,* Del. Ch., 34 Del. Ch. 94, 100 A.2d 219, 224 (1953) ("Assuming that the individual defendants did wrong to the Corporation by entering into the contract it does not follow that they committed any wrong in carrying out the contract once it had been made. Indeed, had they not done so, the Corporation would presumably have been subject to liability for breach of contract. The continuing wrong doctrine has been applied to a shareholder derivative suit seeking damages against a majority shareholder based on an unfair contract executed well outside the limitations period, based on the contract being divisible in nature. See *Ripley v. International Railways of Central America,* 8 N.Y.2d 430, 171 N.E.2d 443, 209 N.Y.S.2d 289 (1960). On the other hand, there is authority that a series of payments made under an allegedly fraudulent lease does not constitute a series of actionable wrongs but instead constitute continuing damages stemming from a single initial wrong. *See Quintana v. Wiener,* 717 F. Supp. 77, 79-80 (S.D.N.Y. 1989) ("The subsequent rent payments Mr. Quintana made, if improper, amount only to damages stemming from this initial fraud."). By analogy the same conclusion might obtain when the alleged damages stem from the absence of rent payments in an allegedly self-serving lease. *See also Schreiber v. Bryan,* Del. Ch., 396 A.2d 512, 516 (1978)("what must be decided is when the specific acts of alleged wrongdoing occur, and not when their effect is felt."

8

Tolling Based on the Doctrine of Adverse Domination

The doctrine of adverse domination is an equitable doctrine that prevents the running of the applicable statute of limitations on a corporation's claim against controlling directors who have a duty to cause the corporation to institute an action against themselves. *See Bates St. Shirt Co. v. Waite*, 130 Me. 352, 156 A.293 (1921). The statute of limitations is tolled until such time as the wrongdoers cease to be directors and have given up control of the corporation. *Id.* at 358. Because adverse domination prevents a corporation from asserting claims, it applies in this case only to Plaintiff's derivative claims on behalf of SAM Miller, Inc., and does not apply to any direct claims of the Plaintiff.

"The rationale for the principle is that control of the board by wrongdoers precludes the possibility for filing suit, and that the controlling parties cannot be expected to sue themselves or to initiate an action contrary to their own interests." *Resolution Trust Corp. v. Grant*, 1995 Okla. 68, 901 P.2d 807. *Resolution Trust* specifically identifies Maine as a jurisdiction that has adopted the doctrine of adverse domination. *Id.* at 818 n.16 (citing *Bates Street Shirt Co. v. Waite*, *supra.*

The Law Court in *Bates* noted:

> The reason and justice of the rule is apparent. Directors have no authority to act for the corporation in matters in which they are personally interested. They owe their whole duty to the corporation and they are not to be permitted to act when duty conflicts with interest. They cannot serve themselves and the corporation at the same time.

*Id.* (citing *European N. A. Ry. Co. v. Poor*, 59 Me. 277).

The undisputed facts indicate that the doctrine may fit here. Defendants Steve and Mark Miller together hold a controlling interest in SAM Miller, Inc. and, in the absence of an elected board of directors, they act as directors with respect to the corporation.[3] (Defs.' Opp.

---

[3] Defendants contend that the doctrine of adverse domination does not apply to Steve Miller and Mark Miller because they are shareholders, not directors. The SAM Miller, Inc. bylaws provide that the corporation has no board of directors and that shareholders shall manage the business of the corporation. When a corporation

S.M.F. ¶¶ 1-3.) They owe statutory and fiduciary duties to the corporation including the duties of good faith, loyalty, reasonable care, to serve the best interest of the corporation, and to refrain from self-dealing. *See* 13-C M.R.S. §§ 831-833, 841-843, 871-874 (2014).

Plaintiff contends that the duty the individual Defendants owed to SAM Miller, Inc. conflicts with their self-interest as shareholders of Miller's Lobster. (Pl.'s Opp. Mot. 5.) According to the Plaintiff, by extending the lease for such a long period of time and upon favorable terms to Miller's Lobster, the individual Defendants have enriched themselves at the expense of, and in violation of their duties toward, SAM Miller, Inc. and derivatively, the Plaintiff.

Thus, viewing the facts in a light favorable to the Plaintiff, Plaintiff has made at least a *prima facie* showing of adverse domination by the Defendants for purposes of tolling the statute of limitations on SAM Miller, Inc.'s claims against the Defendants.

However, the issue at hand is not whether SAM Miller, Inc.'s claims are time-barred, but whether the Plaintiff's derivative claims on behalf of SAM Miller, Inc. are time-barred. The distinction has a basis in logic—even if a corporation is unable to pursue claims against insiders because it is dominated by them, the tolling of the limitations period should not necessarily apply when a shareholder has the requisite information and ability to assert derivative claims. In *Aiello v. Aiello*, 447 Mass. 388, 852 N.E.2d 68 (2006), the Supreme Judicial Court of Massachusetts held that adverse domination must be "complete" in order to toll the limitations period, meaning that "the statute of limitations should toll only where a plaintiff can show that the culpable directors (or officers) completely and exclusively controlled the corporation." 447 Mass. at 404, 852 N.E. 2d at 80. The court explained:

---

dispenses with a board of directors in favor of management by the shareholders of the corporation, the shareholders have the powers and liabilities of directors. *See* 13-C M.R.S. § 743(8)(A)-(B) (2014). Because Plaintiff and the individual Defendants have functioned as directors in the absence of an elected board, the adverse domination doctrine still is applicable.

The concerns justifying the application of the adverse domination doctrine are substantially mitigated where an informed, disinterested director is also a shareholder in the corporation. Where such a person could have induced the corporation to sue, it cannot be said that the corporation is barred from seeking redress of the injury to it, and there is no longer a good reason to refuse to impute that person's knowledge of the wrongdoing to the corporation itself.

447 Mass. at 404, 852 N.E.2d at 80-81 (internal quotes and citations omitted).

Although the Maine courts have not addressed the issue, it seems likely that Maine law takes the same common-sense approach. There is no reason why a corporate shareholder who has the ability to assert a derivative claim on behalf of the corporation should benefit from tolling if that person has the knowledge and means needed to assert a derivative claim. A rule automatically tolling the limitations period for shareholder derivative claims for as long as there is adverse domination of the corporation would mean that the deadline for asserting derivative claims could be tolled for decades, especially in the case of closely held corporations with limited or no turnover on the board.

Here, because SAM Miller, Inc. has no directors, the shareholders function as directors, and there is no reason why the principle should not apply to Plaintiff's derivative claims. Thus, the inquiry turns to whether the Plaintiff himself had a sufficient basis on which to pursue his claims during the six-year limitations period that expired in 2010. If not, then the period is likely tolled; if not, his derivative claims, as well as his direct claims, are time-barred. Plaintiff's ability to initiate and sustain litigation is not in question, so the real question is whether he was on sufficient notice of the claims he now asserts to have been able to pursue them within the six-year period.

In this case, the Plaintiff is a one-third shareholder with the same duties and obligations as the Defendants. Plaintiff was privy to and aware of the terms of the original lease executed in 1997, and knew that it expired in 2000. He also knew that Miller's Lobster has continued to

11

use and occupy the wharf for the 15 years since the 1997 lease expired without paying rent to SAM Miller, Inc.

Thus, the fact that he was never told of the 2001 and 2004 lease renewals—assuming it is a fact—is immaterial, because he knew all along that SAM Miller, Inc. was receiving no rent for Miller Lobster's continuing use of the wharf, and thus knew that SAM Miller, Inc. had a potential claim against Miller's Lobster for the value of the use of the wharf. If Plaintiff indeed had no knowledge of the 2001 or 2004 leases, then from his standpoint Miller's Lobster had no right to occupy the wharf rent-free after the 1997 lease expired according to its terms.

For these reasons, the court concludes that, even if SAM Miller, Inc. has been adversely dominated by the individual Defendants, the statute of limitations has not been tolled as to Plaintiff's claims to the extent they seek relief based on wrongful acts by the individual Defendants occurring more than six years before the action was filed, such as relief invalidating the lease *ab initio* and seeking damages on behalf of SAM Miller, Inc. *ab initio*.

Tolling Based on Fraud

The Law Court in *Bates* stated:

As a general rule, the statute of limitations begins to run against an action against directors of corporations for their malfeasance or nonfeasance from the time of the perpetration of the wrongs complained of. This does not apply in cases of fraudulent concealment, when the statute does not commence to run until discovery or until the time prior thereto when the exercise of reasonable vigilance would have disclosed the facts . . .

*Bates St. Shirt Co. v. Waite*, 130 Me. 352, 353, 156 A. 293, 295 (1931).[4]

---

[4] Pursuant to 14 M.R.S. § 859 (2014):

If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580.

*See also Bornstein v. Poulos*, 793 F.2d 444, 446 (1st Cir. 1986) ("Maine's discovery statute provides that in a case of fraud or fraudulent concealment, an action may be commenced at any time within six years after the person entitled thereto discovers that he has a cause of action.").

12

Fraud or fraudulent concealment can toll the statute of limitations on both the direct claims and the derivative claims asserted by Plaintiff in this case. However, the summary judgment record does not support Plaintiff's tolling argument as to either his direct claims or his derivative claims.

Even assuming the Defendants executed a renewal of the lease agreement without notifying the Plaintiff of the corporate action, as mentioned above, not disclosing something is not tantamount to fraudulent concealment. Plaintiff is a one-third shareholder with the same duties and obligations as the Defendants. He, too, functions as a director of SAM Miller, Inc. Plaintiff was privy to and aware of the terms of the original lease executed in 1997 and knew it had expired as of September 2000. He thus knew that Miller's Lobster continued to use and occupy the wharf on some basis—leasehold or otherwise—without paying any rent. In sum, the material fact that is the basis for all of SAM Miller's potential claims against the Defendant, and the basis for all of the Plaintiff's derivative claims—that Miller's Lobster had never paid rent to SAM Miller, Inc. for use and occupancy of the wharf—was known to Plaintiff at all pertinent times. Moreover, the Plaintiff has not made

The Plaintiff argues that the Defendants' "omission by silence" is enough to establish fraud by concealment. *See Glynn v. Atlantic Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117 (When a "special relationship" exists, that is a fiduciary relationship, "omission by silence may constitute the supplying of false information."). However, an inference of fraud arises where the defendant knows particular facts and does not disclose them causing the plaintiff to rely on those facts. *See id.* ¶ 13, 728 A.2d 117. However, in this case, even assuming the individual Defendants failed to appropriately notify the Plaintiff of the two renewals of the wharf lease, there is no indication in the summary judgment record that they or Miller's Lobster misled

13

Plaintiff—he knew or should have known that Miller's Lobster was using the wharf without paying rent. In turn, there is no indication that Plaintiff in fact relied on any act or omission of the Defendants. According, the Plaintiff has not shown that the limitations period was tolled as a result of fraud on the part of the Defendants.

3.    Estoppel

"In cases of equitable estoppel, the statute of limitations has expired and the defendant asserts the running of the statute . . . as a defense. The defendant . . . is estopped from benefitting from the . . . defense because the defendant has acted in such a way as to cause the claimant to forego filing a timely . . . action." *Dasha v. Maine Med. Ctr.*, 665 A.2d 993,995 n.2 (Me. 1995) (internal citations omitted). The Law Court has noted:

> The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim. The plaintiff thus relies to his detriment on the conduct of the defendant, by failing to seek legal redress while the doors to the courthouse remain open to him.

> *Dugan v. Martel*, 588 A.2d 744, 747 (Me. 1991).

In this case, the summary judgment record does not indicate that any conduct by the Defendants actually induced the Plaintiff to delay bringing suit. Rather, the record indicates that, as far as the Plaintiff knew (assuming he was never notified of the two renewals of the lease) the Defendants' company, Miller Lobster, openly continued to occupy the wharf without paying rent and with no valid lease or other right to do so. Thus, the Defendants are not estopped from asserting the statute of limitation as an affirmative defense.

CONCLUSION

Based on all of the Plaintiff's claims having accrued more than six years before this action was brought, and based on the six-year statute of limitations having not been tolled

14

during that six-year period, the statute of limitations has run and the Plaintiff's claims are barred. Defendants' Motion for Summary Judgment is GRANTED.

The Clerk will schedule a telephonic conference of counsel to discuss the schedule for the remainder of the case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated August 7, 2015

A.M. Horton, Justice
Business and Consumer court

Entered on the Docket: 8-7-15
Copies sent via Mail __ Electronically ✓

15

**Alan S. Miller v. Steve N. Miller, et al.**

**BCD-CV-14-36**


## Plaintiff

**Alan S. Miller,**
    Counsel:               *William Welte, Esq.*
                              13 Wood St.
                              Camden, ME 04843


## Defendants


**Steve N. Miller, Mark K. Miller,**
    Counsel:               *Christopher MacLean, Esq.*
                              20 Mechanic St.
                              Camden, ME 04843


**Miller's Lobster Company,**
    Counsel:               *Wayne Crandall, Esq.*
                              10 School St.
                              PO Box 664
                              Rockland, ME 04841


**SAM Miller, Inc.,**
    Counsel:

               *Joseph Baiungo, Esq.*
                              111A Church St.
                              Belfast, ME 04915