STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-22-203

MECHANICAL SERVICES,
d/b/a MAINE CONTROLS,
    Plaintiff,

v.

JEREMY COLLINS, CRAIG KIRBY,
and COLLINS AUTOMATION,
    Defendants

**ORDER ON MOTION
TO DISMISS**
STATE OF MAINE
Cumberland, ss, Clerk's Office

**MAR 0 8 2023** /:28ₚₘ

# RECEIVED

Before the Court is a Motion to Dismiss brought Defendant Collins Automation. Collins

Automation, a company formed by the other Defendants Craig Kirby and Jeremy Collins, argues

under M.R. Civ. P. 12(b)(6) and 9(b) that Count II of Plaintiff's Amended Complaint fails to

articulate a sufficient claim for fraudulent misrepresentation as to Collins Automation and

therefore, that the Amended Complaint should be dismissed as to Collins Automation. The

remaining counts do not involve Collins Automation as a Defendant. For the following reasons,

the Court denies the Motion.

**Background**

The following facts are alleged in the Amended Complaint:

Mechanical Services is a heating, ventilation, and air conditioning ("HVAC") contractor

based in Portland with four other locations in Maine. Pl.'s Amend. Compl. ¶ 6. Maine Controls is

a division of Mechanical Services that specializes in sales, installation, and maintenance of

automatic digital temperature control components and systems. *Id.* Maine Controls serves

Plaintiff-A Robert Ruesch, Esq.
Defendant Collins Auto-Robert Cummins, Esq.
Defs Jeremy Collins & Craig Kirby-David Goldman, Esq.

1

commercial facilities and educational institutions in Maine, and it supplies products to and subcontracts with other HVAC entities in Maine. *Id.*

For about 40 years, Maine Controls has had a business relationship with Schneider Electric Buildings America ("Schneider"), which manufactures HVAC components and systems, wherein Maine Controls would purchase software and materials from Schneider. ¶¶ 7-8. The relationship was mutually beneficial for both companies. ¶ 9.

Kirby was employed by Maine Controls for about 15 years and was a project programmer and manager. ¶ 13. He gave notice of his intent to leave Maine Controls in February 2021 and resigned officially on April 30, 2021. ¶¶ 14-15. Collins was employed at Maine Controls for four years, as a service technician and later a project manager. ¶ 15. He resigned on May 7, 2021. *Id.*

Collins and Kirby had acknowledged receipt of the Mechanical Services Employee Handbook ("Handbook"), which states that "employees are expected to understand and embrace the mission and goals of Mechanical Services, Inc. and contribute in the dedicated efforts and work to fulfill the purpose of this organization." ¶¶ 16-17. It also prohibits solicitation of Mechanical Services employees for any reason on Mechanical Services Property or work time and prohibits solicitation of customers for non-related service of goods." ¶¶ 18-19. It requires employees to take an active interest in promoting the best relationship between Mechanical Services and its customers. ¶¶ 19-20. The conflict of interest policy in the Handbook states that employees cannot perform any work for customers of or compete with Mechanical Services. ¶ 22.

Collins and Kirby worked closely together, and Collins worked directly with Maine Controls customers. ¶ 24. Collins was responsible for managing customer and vendor relationships. ¶ 25. In 2015 and 2016 Schneider announced it would phase out its "I/A" products,

2

and Kirby, in his role evaluating technology and product development, expressed a resulting concern about continuing to install them. ¶¶ 29-30. Kirby expressed in the months and years prior to his departure from Maine Controls that he had concerns about the quality of Schneider's products and services. ¶¶ 27-28.

Based on Kirby's advising, Maine Controls developed a relationship with another manufacturer and installed systems from other vendors, in addition to purchasing Schneider products and systems to maintain Schneider systems for existing customers. ¶¶ 31-34. Some Schneider systems can only be maintained and updated through Schneider proprietary software and equipment. ¶¶ 11-12. In late 2020 or early 2021, Kirby and Collins began planning to form a competitor company, and through Collins's father, they reserved a business name "Collins Automation LLC" in February 2021. ¶¶ 36, 38. They filed for formation of a limited liability company of the same name in March 2021. ¶ 40. Also in early 2021, Collins and Kirby deactivated a Schneider subscription Maine Controls had used to stay informed about Schneider products. ¶ 37.

In spring 2021, Maine Controls learned Schneider would no longer sell software or control devices to it. ¶ 35. Meanwhile, Kirby and Collins were in conversations with Schneider on behalf of Collins Automation, and on April 20, 2021 Schneider informed Collins and Kirby that Collins Automation would be its designated controls vendor in Maine. ¶ 41. Collins was aware that Collins Automation's agreement with Schneider meant that Schneider would refuse to sell to Maine Controls, and he represented to Steve Lizotte, a Maine Controls employee, that the reason Lizotte could not obtain a software license from Schneider was Schneider's agreement with Collins Automation. ¶¶ 42-44. Still, Maine Controls cannot purchase necessary products from Schneider. ¶ 45.

3

While Collins and Kirby were working for Maine Controls, they were working on a project for a long-standing customer ("Customer #1"), and due in part to their pace, they were behind on completion. ¶¶ 46-47. Completion was further delayed by their departures from Maine Controls. ¶ 50. Kirby and Collins have used information obtained through employment with Maine Controls to solicit Customer #1's business and have hired multiple employees of Maine Controls. ¶¶ 51-52. One Maine Controls employee now working at Collins Automation was involved in a pricing proposal with another long-standing Maine Controls customer ("Customer #2"). After being persuaded to make the change by the former Maine Controls employee, Customer #2, whose system is made of Schneider components, switched its specifications so that Maine Controls was replaced by Collins Automation as the only acceptable contractor for its system. ¶¶ 53-58. Despite not being able to purchase Schneider products, Maine Controls is capable of servicing Customer #2's system. ¶ 59.

Until spring 2021, Schneider had never prevented Maine Controls from purchasing any necessary products. ¶ 60. After Maine Controls and its counsel attempted to reach a compromise with Schneider, Schneider issued a Notice of Default and Termination on May 25, 2022 to Maine Controls, which alleged a "failure to maintain sales goals/objectives" and asked Maine Controls to correct the failures or risk termination of its account with Schneider. ¶¶ 61-63. Schneider explained that after termination, Maine Controls would still be able to serve its existing customer base for 18 months by buying Schneider parts for repair and service. ¶ 64. Even though Maine Controls has ordered parts from Schneider since then, Schneider has told Maine Controls it is on a "credit hold" and refused to ship anything. ¶¶ 66-68. Schneider's representative in the finance department has been instructed by the sales department not to release any orders for Maine Controls. ¶ 69. Since Schneider and Collins Automation developed

4

a relationship, Schneider has not been responsive and has not answered questions about the Notice it sent to Maine Controls. ¶¶ 70-71.

Plaintiff Maine Controls brought this action against Craig Kirby, Jeremy Collins, and Collins Automation. Plaintiff's Count I alleges Breach of Loyalty as to Collins and Kirby; Count II alleges interference with economic advantage as to Kirby, Collins, and Collins Automation; and Count III alleges misappropriation of trade secrets as to Collins and Kirby. The Motion currently before the Court only concerns Count II.

Specifically, Count II alleges that, as a manager at Maine Controls, Kirby was responsible for evaluating Schneider products and for Maine Controls' purchasing decisions and that he used his position to steer Maine Controls away from Schneider. At the same time, it alleges Kirby and Collins cultivated relationships with Schneider on behalf of Collins Automation to facilitate Schneiders' decision to stop selling to Maine Controls. It also states that

> Kirby and Collins, individually, and as representatives of Collins Automation, knowingly and fraudulently provided incorrect information and/or withheld information from Maine Controls regarding Schneider for the purpose of interfering with Maine Controls' business relationship with Schneider for their personal benefit and the benefit of Collins Automation. ... As a result ... Maine Controls has suffered and continues to suffer substantial damages.

Pl.'s Amend. Compl. ¶¶ 84-85.

### Legal Standard

On a Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the nonmoving party to determine whether the complaint alleges the elements of a cause of action or facts that may justify relief on any legal theory. *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987). "In all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." M.R. Civ. P. 9(b).

**Discussion**

A well-pled claim for interference with "either an existing contractual relation economic advantage requires (1) the existence of a valid contract or prospective economic advantage, (2) interference with that contract or advantage though fraud or intimidation, and (3) damages proximately caused by the interference." *Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 51, 250 A.3d 122 (citing *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995); *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 12, 150 A.3d 793; *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400).

> Fraud in this context involves
>
> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Rutland v. Mullen*, 2002 ME 98, ¶ 14, 798 A.2d 1104 (quoting *Petit v. Key Bank of Me.*, 688 A.2d 427, 430 (Me. 1996)).

Collins Automation points to First Circuit precedent stating that "a complaint must specify 'the time, place, and content of an alleged false representation.'" *United States* ex rel. *Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (quoting *United States* ex rel. *Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007)); *see Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676 (federal constructions and comments valuable as aids for M.R. Civ. P 8(a) and 9(b)).

6

Ultimately, the test is "whether defendant is fairly apprised of the elements of the claim." *TD Banknorth, N.A, v. Hawkins*, 2010 ME 104, ¶ 24, 5 A.3d 1042.

Collins Automation argues that Plaintiff has not pled the elements of Count II with the particularity required of an action alleging fraud. After a review of the whole Amended Complaint, the Court concludes Plaintiff's pleading is sufficiently particular.

The following allegations support Count II. Maine Controls had an established contractual relationship with Schneider under which Maine Controls purchased Schneider products frequently to install and repair Schneider systems. Kirby, on behalf of Collins Automation, interfered with that contract by leading Maine Controls to seek and support a replacement vendor for new systems. Specifically, "[i]n the years and months" prior to his departure from the company, Pl.'s Amend. Compl. ¶ 28, Kirby, in his capacity as manager at Maine Controls, expressed concerns about the quality of Schneider products. *United Fish Co. v. Barnes*, 627 F. Supp. 732, 734 (D. Me. 1986) (holding an approximate time frame in which the fraudulent conduct was alleged to have occurred is sufficient under the rule). While Plaintiff does not state specifically where this conduct took place, it does state that it was in the context of Kirby's employment with Maine Controls. Kirby's concerns persuaded Maine Controls to pursue and continue relationships with other vendors. In late 2020 and/or early 2021, Kirby and Collins themselves pursued a relationship with Schneider on behalf of a competing company they were forming. This behavior, according to Plaintiff, shows that Kirby did not actually believe it was a good business decision to stop buying products from Schneider or that Schneider products had significant quality issues, despite what he advised Maine Controls.

To the extent that Maine Controls's decision to pursue other vendors in reliance on Kirby's statements occurred before Collins Automation was conceived, Collins Automation is

7

not liable. On the other hand, Plaintiff alleges that after the formation of Collins Automation and during their employment with Maine Controls, both Collins and Kirby failed to inform Maine Controls that they were pursuing Schneider's business on behalf of Collins Automation. This omission was despite their alleged fiduciary duties to Maine Controls. *See Glynn v. Atlantic Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117 (quoting *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996)) (holding that where a fiduciary relationship exists between the parties, omission by silence can may constitute supplying false information). As a result, Maine Controls did not take steps to preserve its relationship with Schneider and can no longer buy Schneider products.

Under this set of facts, Collins Automation could be liable under a theory of respondeat superior. *See Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 12, 970 A.2d 310; Restatement (Second) of Agency §§ 212-264; Restatement (Third) of Agency § 7.03. The Court concludes that these allegations are sufficient to put Collins Automation on notice of the claim against it and to meet the requirements of pleading with particularity. *See Hawkins*, 2010 ME 104, ¶ 24, 5 A.3d 1042. Therefore, the Court denies the Motion to Dismiss.

The entry is

Defendant Collins Automation's Motion to Dismiss is DENIED.

The clerk is directed to enter this Order on the docket by reference. M.R. Civ. P. 79(a).

| | |
|---|---|
| 3/8/23 | *[signature]* |
| **DATE** | **SUPERIOR COURT JUSTICE** |

8

Entered on the Docket: 03/08/2023